GREENE v. TAYLOR.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 128. Argued November 20, 21, 1889. — Decided December 16, 1889.

The right of action of a plaintiff under a title derived from an assignee in bankruptcy, to redeem from a sale under a deed of trust, was held in this case to be barred by the two years' limitation contained in § 5057 of the Revised Statutes.

That section does not apply only to a suit to which the assignee in bankruptcy is a party; but it applies to a case where nearly a year of the two years had run against the right while the assignee owned it, after his appointment, and the rest of the two years ran against it in the hands

of the plaintiff, his transferee, so that more than two years elapsed between such appointment and the bringing of the suit to redeem, and the property covered by the trust deed was held adversely by the defendant, under a sale under the trust deed, for more than two years before the bringing of that suit.

On the facts of this case there was no fraudulent concealment by the defendants from the assignee in bankruptcy or the plaintiff.

Sufficient information as to the trust deed, and its contents, was given in the bankruptcy schedule, filed more than eleven months before the assignee was appointed, and more than one month before the sale under the trust deed, to put the assignee in bankruptcy and the plaintiff on inquiry.

Moreover it appeared that, two days before the sale under the deed of trust, the plaintiff knew of the contents of the schedule in bankruptcy and who held the debt secured by the deed of trust.

The plaintiff having, by a petition to the bankruptcy court, procured the sale of the property by the assignee in bankruptcy, and the application of its proceeds on the debt on which his suit to redeem was founded, waived any right to redeem arising under a judgment before recovered by him for his debt.

THE court, in its opinion, stated the case as follows:

On the 1st of April, 1871, Nathan S. Grow, of Chicago, Illinois, executed a trust deed to Benjamin E. Gallup, of the same place, to secure the payment of a promissory note for $35,000, payable in five years from that date, with interest at the rate of 9 per cent per annum, payable half-yearly on October 1 and April 1, as evidenced by 10 interest coupons, bearing the same date, for $1575 each. The note was payable to the order of Grow, and was endorsed by him payable to David R. Greene or order. The trust deed stated that the $35,000 was a loan to Grow made by the legal holder of the note. Greene was the person who loaned the money. He resided in New Bedford, Massachusetts. The real estate covered by that trust deed was at the northeast corner of West Madison and Sheldon streets, in Chicago, being 73 feet on West Madison Street, in front, 116 feet deep, on Sheldon Street, 73 feet in the rear, on a line parallel with West Madison Street and on a 16-feet alley, running east and west, and 116 feet on the east line, parallel with Sheldon Street. It was described as having on it three four-story brick stores with stone fronts, fronting on West

Madison Street; and it was stated that a block of two-story and basement brick dwelling-houses was about to be erected on the property. The front piece was 60 feet deep; then came a 12-feet court; and the rear part was 44 feet deep. The entire property came afterwards to be known as "the Jefferson-Park Hotel property." This trust deed was recorded April 1, 1871.

Grow on the 9th of February, 1876, conveyed the entire property to William Scott Robertson, subject to an incumbrance of $35,000, by a warranty deed, which was recorded February 18, 1876. The loan to Grow matured on the 1st of April, 1876, and in the spring of 1877 negotiations were had between Robertson and Greene for a renewal of the loan. These negotiations were successful, and Robertson executed a trust deed dated April 2, 1877, (the 1st of April, 1877, being Sunday,) covering the same property, to Francis B. Peabody, of Chicago, to secure the payment of a promissory note for $35,000, which, the trust deed stated, was for a loan of that sum, made on the day of the date of the trust deed, by the legal holder of the note, to Robertson, the note being payable three years after date, with interest at the rate of $7\frac{1}{2}$ per cent per annum, payable half-yearly on the 2d of October and 2d of April, with six interest coupons for $1312.50 each. The name of David R. Greene was not mentioned in the trust deed or in the promissory note. The six interest coupons were each of them signed by Robertson, and made payable to his order, and each was endorsed by him payable to the order of David R. Greene. The note was payable to the order of Robertson and was endorsed by him payable to David R. Greene or order. It stated that it was expressly agreed that if default should be made in the payment of any instalment of interest when it should become due, and such default should continue for 30 days thereafter, the principal sum should, at the election of the legal holder of the note, at once become due and payable, such election to be made at any time after the expiration of said 30 days, without notice; and this provision of the note was recited in the trust deed. It was provided in the trust deed, that if default should be made in the payment of the

principal sum secured by the note, whether it should have become due by election or by the regular maturity of the note, or if Robertson should fail to perform its agreements, it should be lawful for the trustee, on application of the legal holder of the note, with or without a previous entry on the premises, to sell and dispose of them and all right, title, benefit, and equity of redemption of Robertson, his heirs and assigns, therein, at public auction, to the highest bidder, for cash, having first given notice of the time and place of such sale, (such sale to be made at some place in Cook County, Illinois,) by publication once in each week for four successive weeks, the first publication to be at least 30 days before the day of sale, in some newspaper published in Cook County, authorized by law to publish legal notices, personal notice to Robertson, his heirs or assigns, or any person claiming by, through, or under him, of such sale, being expressly waived, and in the name of the trustee to execute and deliver to the purchaser at the sale a deed of conveyance of the premises in fee simple ; and that all the recitals that might be contained in such deed, setting forth the fact of such default, due notice, advertisement and sale, and any and all such other facts and statements as might be proper to evidence the legality of such sale and conveyance, should be considered and taken, on all occasions and as between all persons, to be *prima facie* evidence of the truth of all the facts and matters set forth in such recitals, and such deed should be effectual to pass the title, and all the right and equity of redemption of Robertson, his heirs and assigns, in and to the premises sold. This trust deed was acknowledged by Robertson on the 23d of July, 1877, and was recorded on the same day.

On the 30th of July, 1877, James Taylor and John Bruce recovered a judgment against Robertson in the Circuit Court of the United States for the Northern District of Illinois, for $21,666.66 damages and $120.05 costs. Robertson took steps toward bringing a writ of error to review that judgment, and for that purpose procured one Hugh Templeton to sign a bond as surety, and, to indemnify Templeton therefor, executed to him a bond and a mortgage covering the real estate aforesaid,

subject to the encumbrance of the trust deed to Peabody. This mortgage was acknowledged August 17, 1877, and recorded August 22, 1877. As the writ of error was never perfected, Templeton did not become liable, and the mortgage to him was no encumbrance on the premises.

Robertson, on the 1st of September, 1877, leased to John McAllister the second, third and fourth stories of the three stores fronting on West Madison Street, and known as the Jefferson-Park Hotel, for two years, at a rent of $300 a month. This rent was afterwards reduced to $30 a month from January 1, 1878.

On the 15th of October, 1877, Taylor and Bruce issued to the marshal an execution on their judgment. This was returned wholly unsatisfied on the 12th of January, 1878; and, on the 24th of January, 1878, they, being aliens, filed a bill in equity, in the form of a creditors' bill, in the Circuit Court of the United States for the Northern District of Illinois, against Robertson, Templeton, McAllister, Gallup and Peabody. The bill was founded on their judgment and the issuing of their execution and its return unsatisfied. It set forth that Robertson was interested in a large quantity of real estate, including the before-mentioned property, 73 feet by 116 feet, at the corner of West Madison Street and Sheldon Street, which, it stated, brought in a large rental monthly. It contained the allegations usual in creditors' bills, and alleged that Robertson had property which ought to be applied to the payment of the plaintiffs' judgment, and prayed that he might discover on oath what assignments or transfers he had made of his property. It averred that the defendants other than Robertson, held the title to real estate belonging to Robertson, for the purpose of defrauding the plaintiffs, and prayed for a discovery on oath by such defendants of all such real estate. It did not mention the trust deed to Gallup, or the trust deed to Peabody, or the mortgage to Templeton, or the lease to McAllister.

The plaintiffs, on the 29th of January, 1878, issued to the marshal a second execution on their judgment, which, on the 15th of February, 1878, was levied on real estate of Robertson, not including the premises at the corner of West Madison and Sheldon streets.

On the 2d of March, 1878, the five defendants to the bill filed a general demurrer to it, for want of equity. On the 25th of March, 1878, the court entered an order sustaining the demurrer.

Robertson failed to pay to Greene any of his interest due October 2, 1877, and April 2, 1878, being two instalments, amounting to $2625, and was pressed for payment by Greene, through Peabody, in April and May, 1878. This pressure continued through the summer of 1878, and Greene complained directly to Robertson that the latter was receiving the rents of the property and paying him no interest. This pressure took the shape of a request by Greene to Robertson that the latter should turn over to the former the rents of the property, and a statement that otherwise the trust deed would be foreclosed.

Greene, on the 27th of August, 1878, notified Peabody in writing that, by reason of the default, continued for more than 30 days, in the payment of the instalments of interest due October 2, 1877, and April 2, 1878, on the note secured by the trust deed of April 2, 1877, Greene had elected to make the principal note at once due and payable; and that, default having been made in its payment, he requested Peabody to proceed at once, under the powers contained in the trust deed, to advertise and sell the premises.

Robertson, on the 29th of August, 1878, notified Peabody and Greene that he intended to file a petition in bankruptcy; and that he proposed to go to Scotland (which was his native country) to see what arrangement could be made of his affairs, and to turn over to Greene, from the 1st of September, 1878, the rents of the property monthly.

On the 30th of August, 1878, Robertson signed a paper, addressed and delivered to Peabody as trustee, which stated that the note secured by the deed of trust was held by Greene; that Peabody had that day demanded of Robertson the possession of the premises covered by the deed of trust, on account of a breach of the covenants contained therein; that Robertson consented to Peabody's taking possession of the premises; that he thereby delivered such possession to Peabody, and requested the tenants of the premises severally to attorn to Peabody; and

that it was understood that Peabody should respect the leases granted by Robertson and his reservation of certain rooms mentioned in the lease to McAllister. On this paper Peabody, as trustee, wrote an order addressed to Edmund A. Cummings, directing him, for Peabody and as his agent, to receive from Robertson possession of the premises and the attornment of the tenants. Six of the tenants, including McAllister, on the same day signed a paper by which they recognized the transfer of the possession of the premises from Robertson to Peabody as trustee, and respectively attorned to Peabody as to the premises occupied by them.

Robertson, on the 31st of August, 1878, filed in the District Court of the United States for the Northern District of Illinois his voluntary petition in bankruptcy, with schedules. In the schedule of " Bankrupt creditors holding securities," there appeared, under the heading "names of creditors," " David R. Greene ; " under the heading " residence and occupation," " New Bedford, Mass. ; " under the heading " when and where contracted," " April 2, 1877, at Chicago, Illinois ; " under the heading, "value of securities," "unknown ; " under the heading, " amount of debt," " $35,000 and interest at 7½ per cent since April 2, 1877 ; " and under the heading, "particulars," "note for money borrowed to take up old mortgage upon property when bought, and secured by trust deed to F. B. Peabody upon lot 26 ( except the east two feet thereof ) and lots 27 & 28, all in block 6, in McNeill's subdivision, in Wright's addition to Chicago, with improvements and appurtenances ; property known as 487 & 489 and 491 West Madison Street, Chicago, and 52 and 54 Sheldon Street ; " being the premises in question.

Peabody, on the 2d of September, 1878, notified Greene that he would forthwith proceed to advertise the foreclosure sale. On the same day, Peabody, as successor in trust to Gallup under the trust deed of April 1, 1871, made to Gallup by Grow, executed and acknowledged a paper releasing to Grow all the interest acquired under the trust deed, the paper stating that the indebtedness secured by that deed had been cancelled.

On the 3d of September, 1878, Peabody, as trustee, prepared a notice of sale, dated that day, setting forth the facts of the date and record of the trust deed of April 2, 1877; the contents of the note secured by it; the fact that its legal holder, as thereby authorized, had elected to make the principal sum therein mentioned, and the same had thereby become, at once due and payable, by reason of the default, continued for more than 30 days, in the payment of the instalments of interest due thereon October 2, 1877, and April 2, 1878, respectively; that there was due on the note the principal sum of $35,000, with interest thereon at the rate of $7\frac{1}{2}$ per cent per annum, from April 2, 1878, and the two defaulted instalments of interest, of $1312.50 each, with interest on each at the rate of 10 per cent per annum, from the dates when they respectively became due; that default had been made in the payment thereof; that, on the demand of the legal holder of the note, the trustee, on October 7, 1878, at 11 o'clock in the forenoon, at the southwest corner of Dearborn and Monroe streets, in Chicago, at the door of No. 174 Dearborn Street, would sell at public auction to the highest bidder for cash, for the uses and purposes specified in the trust deed, the premises described therein, (repeating the description contained in the trust deed,) together with all the right, title, benefit and equity of redemption of Robertson, his heirs and assigns, therein; and that the records of the recorder's office showed that Templeton had acquired some title or interest in the premises, as assignee of Robertson, subject to the trust deed. This notice was published in the "Chicago Journal," a newspaper of general circulation, printed and published in Chicago, four times, being one time a week for four successive weeks, the date of the first paper containing the same being September 4, 1878, having been published and issued on that day, and the date of the last paper containing the same being September 23, 1878, having been published and issued on that day.

Robertson, on the 7th of September, 1878, left Chicago for Scotland; and on the same day he was adjudicated a bankrupt. He has never since been in Chicago.

On the 5th of October, 1878, Taylor and Bruce, as creditors

of Robertson, filed a petition in the District Court, in bankruptcy, sworn to by Charles B. McCoy, their agent at Chicago, setting forth their judgment, and stating that no assignee of the estate of Robertson had yet been chosen; that Robertson, in his inventory of assets, had scheduled a large amount of property, which required the immediate personal attention of some person properly authorized to care therefor and preserve the same for the benefit of the estate, and prevent waste, injury and loss thereof; that among the assets so scheduled, with other real estate, was "the property known as the Jefferson-Park Hotel, on West Madison Street, Chicago." The petition prayed that a provisional assignee be appointed for the estate of Robertson, with the usual powers in such cases, to act in the premises until the regular assignee should be chosen. On the same day, Bradford Hancock was appointed by the District Court provisional assignee of the estate of Robertson, "with full power and authority to take possession of, manage, and control the same, and to collect the rents due said estate."

The sale under the trust deed took place on the 7th of October, 1878, at the hour and place named in the published notice. Greene became the purchaser, and Peabody, as trustee, on the same day executed and acknowledged a deed to him, which was recorded October 10, 1878. That deed recited the making of the note and its contents, including the provision for election by the legal holder of the note as to the becoming due of the entire principal; the making and recording of the trust deed; the power of sale given by it to the trustee; and the provisions in it for notice and for giving a deed to the purchaser. It also recited the default in the payment of the two instalments of interest; the election by the legal holder of the note that the principal sum should at once become due and payable; the amount that was due for principal and interest; that the legal holder had applied to the trustee to advertise and sell the premises; that he had advertised them, and all right, title, benefit and equity of redemption of Robertson, his heirs and assigns, therein, for sale at public auction to the highest bidder for cash, on the day and at the place before mentioned;

the notice he had given; that the contents of the notice were in conformity with the provisions of the trust deed and of the statute; that, in pursuance of said notice, and at the time and place of sale therein mentioned, he had offered the premises described in the trust deed, and all right, title and equity of redemption of Robertson, his heirs and assigns, therein, for sale at public auction to the highest bidder for cash; that Greene was such highest bidder, and bid therefor $30,000, which was the highest bid; and that the same were accordingly struck off and sold to Greene at that price. The deed then conveyed to Greene, his heirs and assigns forever, the premises described in the trust deed, by the description therein contained, together with all the right, title, benefit and equity of redemption of Robertson, his heirs and assigns, therein, to have and to hold the same, with the appurtenances, to Greene, his heirs and assigns forever. It further stated that Peabody covenanted to the extent, and no more, that he had fulfilled all the powers and trusts in said deed contained, in respect to the sale, in accordance with the terms of the trust deed.

The $30,000 for which Greene purchased the property was applied to pay the first and second interest coupons, with interest thereon to October 17, 1878, and interest on the note to that date from April 2, 1878, the expense of advertising, the fees of the trustee, and sundry back taxes, and the balance of the amount, $24,107.43, was endorsed by the trustee as paid on the principal of the note for $35,000, on the 17th of October, 1878.

On the 23d of October, 1878, the release by Peabody, as successor in trust, of the trust deed from Grow to Gallup, was recorded.

Greene died at New Bedford on the 19th of May, 1879.

On the 7th of July, 1879, a warrant in bankruptcy was issued against the estate of Robertson.

Bradford Hancock was, on the 24th of July, 1879, appointed assignee in bankruptcy of Robertson, and on the same day the register assigned to him all the estate real and personal, of Robertson, including all the property, of whatever kind, of

which he was possessed, or in which he was interested, or entitled to have, on the 31st of August, 1878, except property exempt by § 5045 of the Revised Statutes.

Taylor & Bruce, on the 23d of March, 1880, filed in the bankruptcy court a proof of debt against Robertson, founded on their judgment and on the levy made February 15, 1878, under the execution issued January 29, 1878. They claimed therein a lien, by virtue of the judgment, on all the real estate of Robertson, and, by virtue of such levy, on the portion thereof on which it was levied, and a first preference on all the proceeds of the property covered by the lien of the judgment and the levy.

On the 25th of March, 1880, Taylor and Bruce filed a petition in the bankruptcy court, setting forth the recovery of their judgment; the issuing and return unsatisfied of their execution of October 15, 1877; the filing of their creditors' bill in the Circuit Court on the 24th of January, 1878; the fact that they had proved their debt in the bankruptcy court; that on the 30th of July, 1877, the date of, the recovery of their judgment, Robertson owned real estate, all of which was encumbered with sales for taxes, and the greater part with mortgages or deeds of trust to about or near the full value thereof, so that of the latter class he was, at the time of the filing of the petition in bankruptcy, at best only invested with an equity of redemption; that at the time their judgment was rendered, and at the time of the filing of the petition in bankruptcy, he owned sundry real estate which was unencumbered except by tax sales and judgments (describing it); that, at those times, he owned or had interest in real estate encumbered by mortgages and trust deeds, and also by tax liens, describing it, and as part of it describing the property 73 feet by 116 feet, on the corner of West Madison Street and Sheldon Street, "incumbrance, $35,000, besides interest and taxes;" that on the 29th of January, 1878, they issued a second execution on their judgment; that on the 15th of February, 1878, it was levied on all the real estate described in the petition, except a small portion in Cook County, Illinois, which was heavily encumbered; that before any sale was made by the marshal,

Robertson went into bankruptcy, and no sale had ever been made under the execution, but the levy was in force as a first lien of any judgment; that they were entitled to have the amount of their judgment paid out of the proceeds of the sale of the property, to the exclusion of all the other creditors of Robertson, except those who held mortgages or liens prior to their judgment; and that they were willing and desirous to have the administration and enforcement of the lien of their judgment transferred to the bankruptcy court, and established by that court, and enforced against the property of the bankrupt estate. They prayed that their lien might be established against the described real estate; that Hancock, the assignee, might be ordered to sell said real estate and apply the proceeds to pay their judgment; and that they might be permitted to purchase at the sale and credit their bids on the judgment.

Hancock, the assignee, on the 2d of April, 1880, presented a petition to the bankruptcy court, in answer to a rule for him to show cause, issued on the filing of the petition of Taylor and Bruce of March 25, 1880, setting forth that he believed the allegations of that petition to be substantially correct, and that he believed it was for the best interest of the bankrupt's estate that said real estate should be sold without further delay. He prayed for an order directing him to sell it; that it be sold subject to all taxes, liens and incumbrances thereon, except the judgment of Taylor and Bruce and judgments rendered subsequently thereto; and that he be ordered to bring the proceeds of sale into court or make such other disposition of them as the court should direct. On this petition, and on the same day, an order was made by the bankruptcy court, on the consent of the assignee, of Taylor and Bruce, of the bankrupt, and of two creditors by a judgment subsequent to that of Taylor and Bruce, directing the assignee to sell all the real estate of the bankrupt, free and clear of the lien of the judgments mentioned, " but subject to all other liens and incumbrances thereon, and all taxes and assessments thereon," and to bring the proceeds of the sale into court, to be paid to such judgment creditors according to the priority of their liens on the property sold, to the amount of their respective judgments.

On the 26th of April, 1880, the assignee made a report to the bankruptcy court, setting forth that, on the 24th of April, 1880, he had sold to the highest bidder for cash all the right, title and interest of the bankrupt, and of himself as assignee, to real estate which he described, free and clear of the lien of the judgment and execution-levy of the creditors mentioned in the order of sale, " but subject to all other liens and incumbrances thereon, and taxes and assessments thereon." The description included the premises at the corner of West Madison Street and Sheldon Street, with the buildings thereon, at the sum of $250, to L. G. Pratt, trustee. The gross proceeds of sale were $6122, and the net proceeds $5107.42, which the assignee reported to the register on the 27th of May, 1880.

The register, on the 14th of June, 1880, made an order directing the assignee to pay to Taylor and Bruce $5053 out of the proceeds of the sale.

On the 17th of June, 1880, the assignee, by a deed recorded on the 30th of August, 1880, conveyed to Lorin G. Pratt, trustee, certain real estate purchased by him at said sale, including the premises at the corner of West Madison and Sheldon streets. The deed recited the prior proceedings in bankruptcy, the order of sale and its confirmation, and the order for a deed, and conveyed all the right, title and interest of the bankrupt, which he had on the 31st of August, 1878, and of the assignee, subject to all unpaid taxes and to all liens and incumbrances, unless by the terms of sale expressly excepted, to the real estate described in the deed.

Robertson, on the 4th of December, 1880, filed his petition for a discharge in bankruptcy.

Taylor and Bruce, on the 22d of December, 1880, directed the marshal to release the levy made February 15, 1878, and to return the execution of January 29, 1878, unsatisfied. This was done.

On the 5th of January, 1881, under an execution issued to the marshal on the previous day, on the judgment of Taylor and Bruce, he levied on certain real estate of Robertson, including the premises at the corner of West Madison and Sheldon

streets, with all the buildings and improvements thereon, and on the 27th of January, 1881, sold the premises at the corner of West Madison and Sheldon streets, to Lorin G. Pratt, trustee, for the sum of $5000. No deed appears to have been made under this sale.

No proceedings having been taken in this suit since the demurrer to the original bill was sustained, an order was made, on the 6th of July, 1881, after an interval of more than three years and three months, giving leave to the plaintiffs to amend their bill and also to file a supplemental bill.

On the 17th of September, 1881, they filed an amended and supplemental bill, dismissing the original bill as to all the real estate except that situated at the corner of West Madison and Sheldon streets, 73 feet by 116 feet, with the buildings thereon erected. This new bill recited the contents of the original bill, and stated that, on a demurrer thereto, the court held that all the property and estate of Robertson, so far as it could be discovered, must first be exhausted, before the court could interfere in equity to compel the discovery and relief sought, and required the plaintiffs to wait until all such visible property and estate was so sold and exhausted. It set forth the contents of the trust deed from Grow to Gallup; that Peabody was the successor in trust of Gallup; that the deed was made to secure the payment of an indebtedness of $35,000 to Greene; that Peabody had been in possession of the premises, and receiving the rents and profits, amounting to more than sufficient to pay all the interest on the debt, and the taxes, insurance and expenses of carrying the property; that, in pursuance of a fraudulent scheme to place the property beyond the reach of the plaintiffs, Robertson, on the 23d of July, 1877, which was two days after the verdict was returned in their suit against Robertson and seven days prior to the rendering of their judgment, executed a second deed of trust to Peabody, to secure an alleged additional indebtedness of Robertson of $35,000; that, for the purpose of making it appear that the trust deed had been made before the verdict was rendered, it and the note were dated back to April 2, 1877; that, for the purpose of preventing the plaintiffs from learning who was

the real holder of the note and the interest coupons, or whether the deed was a *bona fide* lien in addition to the first lien, the note was made payable to the order of Robertson and endorsed by him in blank; that said trust deed was only a renewal of the former trust deed from Grow to Gallup, and was made to secure to Greene said debt to him, and was not an additional incumbrance on the property; that said first mortgage should have been released of record so that the plaintiffs might ascertain from the record the true amount of the encumbrance, but it was withheld, making it appear that the property was subject to $70,000 incumbrance, instead of only $35,000 ; and that Robertson prayed an appeal from said judgment to the Supreme Court of the United States, which appeal was not perfected, but on account of its pendency the plaintiffs were unable to issue an execution on their judgment until October 15, 1877. The new bill then recited the mortgage to Templeton, and averred that it ought to be cancelled of record. It then set forth the making of the lease to McAllister for two years from September 1, 1877, at a rent of $300 a month, and the reduction of the rent to $30 a month from January 1, 1878, and averred that this was done for the purpose of lessening the income from the property, so that it would be insufficient to pay the taxes, insurance and expenses, and the interest on the loan ; and that the plaintiffs used due diligence to reach the estate of Robertson, but were unable to realize anything therefrom by execution. It then set forth the turning over by Robertson to Peabody, as agent and trustee for Greene, of all the leases, rents and profits of the premises ; and alleged that this was done in pursuance of the fraudulent scheme aforesaid, and under an arrangement substantially as follows : Robertson was to go through bankruptcy and obtain a discharge ; Greene and Peabody were to carry the property and collect the income from it, but by reason of such reduction of the rent the income would be insufficient to carry it ; Peabody was thereupon to declare a forfeiture for non-payment of interest, and sell the property under the deed of trust, and thus cut out the lien of the plaintiffs' judgment, and also prevent the property from coming to the hands of the assignee in

bankruptcy, but Robertson, or his agent, said McAllister, was to be allowed to redeem from such sale, after Robertson had procured his discharge, upon paying the amount actually due according to the terms of the loan, and the expenses incurred in carrying the property, less the amount received from the rents and profits thereof, the same as if no sale had been made; the release of the trust deed to Gallup was to be withheld from record, so as to prevent any outside bidder and the plaintiffs from bidding at the sale; such arrangement was made with Robertson and McAllister, his agent, and Peabody, as agent for Greene, began to collect the rents of the premises under the leases, and they were, if judiciously and honestly applied, more than sufficient to carry the property and pay the interest on the loan, but they were not applied to that purpose. The new bill further set forth that, immediately on the making of such arrangement, Robertson filed his petition in bankruptcy, and very soon afterwards left the United States and had since remained continuously absent therefrom; so that he could not be examined; that Peabody proceeded to declare a forfeiture of the trust deed for non-payment of interest on the loan, and, on October 7, 1878, pretended to sell the premises, and executed a deed thereof to Greene for a pretended bid at the sale of $30,000; that after the sale an agreement was made by Robertson, either in person or by his agent McAllister, with Greene, and Peabody, as the agent of Greene, whereby Greene was to hold the property and collect the rents and apply them to carrying the property, and to allow Robertson or McAllister to redeem on payment of the amount of the incumbrance and interest, and the cost of carrying the property, less the amount of rents received, the same as if no sale had been made; that the notice of sale was insufficient and defective; that the release of the trust deed to Gallup was purposely withheld from record; that the plaintiffs had no actual notice of the sale, but it was concealed from them and they did not learn of it until long afterwards; and that the deed of June 17, 1880, by the assignee in bankruptcy, on his sale, was made to Lorin Grant Pratt as trustee for the plaintiffs. It then set forth the purchase of the property by the plaintiffs for $5000, at the

marshal's sale; that Greene died after the pretended purchase by him of the premises at the sale by Peabody; that on his death whatever right, title, or interest he had in and to the premises passed to and became vested in Mehitable B. Greene, his widow; William W. Crapo and Charles W. Clifford, as trustees of Robert B. Greene, Susan G. Page, Horatio N. Greene, and Francis B. Greene; and said Robert B. Greene, Susan G. Page, Horatio N. Greene, and Francis B. Greene, as the heirs at law or devisees of said David R. Greene, and was still so held by and vested in them; that such heirs at law or devisees are citizens of Massachusetts and of full age; and that E. A. Cummings, a citizen of Illinois, is the agent for the property, and collecting the rents for the heirs or devisees of Greene.

The new bill made as defendants the five persons who were defendants to the original bill, and also the widow, and the heirs or devisees above named of Greene, and their trustees, and Cummings, their agent. Its prayer was that the mortgage to Templeton might be declared void; that the deed from Peabody to Greene might be set aside as against the rights of the plaintiffs; that Greene, during his lifetime, and his heirs or devisees, and Cummings as their agent, might be decreed to be mortgagees in possession; that they and Peabody make full answer in the premises; that an account be taken; and that the plaintiffs be allowed to redeem on paying the amount found to be due.

All the defendants, except Robertson and Templeton, entered an appearance in the suit on the 21st of November, 1881.

The plaintiffs, on the 15th of December, 1881, consented to the discharge of Robertson in bankruptcy.

On the 31st of December, 1881, all of the defendants who so appeared, except McAllister, put in an answer to the original bill and the amended and supplemental bill, denying all the allegations imputing fraud to the said defendants or to Greene in his lifetime, and claiming that the foreclosure proceedings by Greene and Peabody were had in good faith.

On the 6th of February, 1882, a replication to this answer was filed, and on the 6th of June, 1882, the cause was referred to a master, to take proofs and report them.

After some proofs had been taken on the part of the plain-

tiffs, and on the 4th of January, 1883, the plaintiffs filed an amendment to their amended and supplemental bill, which averred that Peabody, in order to conceal the time of the sale from the plaintiffs, caused the notice of sale to be published in "The Chicago Weekly Journal," a newspaper which was not read in the city of Chicago and had no circulation in said city or in Cook County; that the premises sold were composed of three separate lots; that the north 44 feet ·of the property was separated from the south portion, fronting on West Madison Street, by an alley or court 12 feet wide; that such north 44 feet were divided into two lots of 22 feet each, on each of which stood a brick dwelling-house 22 feet wide and fronting on Sheldon Street, which were used for private dwelling-houses, and were entirely distinct from the hotel part of the premises; that Peabody sold the property in bulk to Greene, at half its value, when it was his duty to have sold it in separate lots; and that, if he had so offered it, the part of it used for a hotel, and fronting on Madison Street, south of the alley or court, would have brought more than sufficient to pay off the debt, interest and costs.

On the 6th of January, 1883, the defendants answered this amendment, denying its allegations; and, on the 29th of January, 1883, they amended their answer by averring that, as to so much of the bill, amended bill, and supplement, as alleged any agreement between Greene and Robertson for the redemption or repurchase of the premises by Robertson, such supposed agreement was not in writing, signed by Greene or by any person by him authorized in writing, according to the statute of Illinois in such case made and provided.

On the 27th of October, 1883, the master reported the proofs to the court, and the cause was heard before Judge Blodgett, in November, 1883; and, on the 14th of April, 1884, he filed an opinion, which is reported in 21 Fed. Rep. 209, deciding the case in favor of the plaintiffs.

A motion for a rehearing was made and overruled on the 7th of July, 1884, and on the 29th of July, 1884, an interlocutory decree was entered, finding that the equities of the cause were with the plaintiffs; that they were entitled to redeem the

premises in question from the indebtedness secured thereon in favor of the heirs and representatives of the estate of David R. Greene, deceased, upon such terms as might be thereafter fixed by the court; and that a reference be had to a master, who was named, to take and report to the court an account of what was due to such heirs and representatives, for principal and interest, on the debt secured by the trust deed to Peabody, and of the amounts paid for taxes, assessments and charges provided for in such trust deed, and an account of what had been paid by said defendants for necessary repairs and improvements, and an account of the rents and profits of the premises, and to report such accounts with the evidence.

Those accounts were taken, and the master filed his report on the 15th of July, 1885, finding due to the defendants on the 12th of June, 1885, on the principles stated in the interlocutory decree, $45,641.66. Both parties filed exceptions to this report. Before they came on for hearing, and on the 4th of January, 1886, the defendants moved for leave to amend their answer, so as to set up the limitation of actions provided by the bankruptcy statute. The consideration of the motion was postponed until the final hearing of the cause.

The case came on to be heard on the 1st of April, 1886, and on the 3d of April, 1886, the court made an order allowing the defendants so to amend their answer, and also granting leave to the plaintiffs to amend their bill, and ordering the replication to the original answer to stand as a replication to such amendment thereto, and giving leave to either party to put in before the master further evidence on the subject matter of such amendments, directing the master to continue the account from June 12th, 1885, to April 1, 1886, and ordering that such additional evidence and statement of account be considered as if taken before the hearing, and that all exceptions to the former report of the master be considered as exceptions to such supplemental matters.

In pursuance of such leave, the plaintiffs amended their amended and supplemental bill, by averring that neither they nor the assignee in bankruptcy had any knowledge that the sale by Peabody had been made, until the 24th of April, 1880;

that they did not have any knowledge of such collusive agreement between Robertson and his agents, and Peabody as trustee for Greene, until on or about September 13, 1881; that the details of such agreement did not come to their knowledge until the taking of the evidence in the cause; that such sale and agreement were purposely concealed by all parties thereto, notwithstanding all due diligence was used to discover the same; that Peabody having been, prior to the making of the sale, placed in possession of the property as agent and trustee, and there being no apparent change in the possession of the property thereafter, there was nothing to advise the plaintiffs of the sale, unless they had accidentally discovered the record of the deed from Peabody to Greene, and they made no examination for that, for the reason that, by the conduct of Robertson and his agents and of Peabody, they had been lulled into the belief that no foreclosure or sale would be made, at least prior to April 2, 1880, when the debt secured by the trust deed to Peabody would mature; that the sale made by Peabody, October 7, 1878, was made after the filing of the petition of Robertson in bankruptcy, August 31, 1878, and before the appointment of his assignee, July 24, 1879, and while there was no representative of the estate of Robertson and of his equity of redemption in the property, on whom the notice of sale could operate, or who could protect the estate and the creditors; that the sale was, therefore, void as against the rights of the plaintiffs, and as against the assignee in bankruptcy and the plaintiffs as purchasers of the title and right of such assignee, under the provisions of the bankruptcy statute; that such sale, made under such circumstances, should not in equity be allowed to cut off the plaintiffs from their right to redeem from the trust deed notwithstanding the sale and the deed thereunder; and that the plaintiffs should be decreed to have taken the title of Robertson in and to the property in the same condition as it was on the 31st of August, 1878, unaffected by the sale by Peabody, and with full right to redeem from the trust deed as if no sale had been made.

The defendants filed the proposed amendment to their answer. As to the allegation that the sale by Peabody took

place, and his deed to Greene was made, pending the proceedings in bankruptcy, and before the election of an assignee, or at a time when the power of sale under the trust deed was suspended, and as to any other irregularity in the notice of sale, or any right in the plaintiffs or in said Pratt, derived from the assignee in bankruptcy, to set aside the deed from Peabody to Greene for any matter alleged, it said that the right to do so, if it ever existed, belonged to the assignee and the provisional assignee, as representing the creditors in the bankruptcy proceeding; that the assignees and the plaintiffs waived such claims and equities and failed to assert them; that at the time Peabody made the deed to Greene, on October 7, 1878, Hancock was provisional assignee in the bankruptcy matter, and on the 24th of July, 1879, became assignee; that the supposed equities and claims under which the plaintiffs pretended to have derived a right, under such assignee, to vacate such foreclosure and redeem the premises, did not accrue within two years next before the bringing of the amended and supplemental bill of September 17, 1881, wherein the defendants, excepting Peabody, were for the first time impleaded in this suit, and wherein, as to all of the defendants, said pretended rights were for the first time asserted; and that those claims and equities, if they ever existed, were barred by such laches and by the statute at the time when the supplemental bill was filed. The amendment set up such laches as an equitable bar and defence to so much of the bill as rested upon such pretended equities, and averred that, by the bankruptcy act, the plaintiffs, by reason of such lapse of time and of the said facts, were barred from claiming any relief by reason of such pretended equities, and set up said bar and limitation of two years. The amendment to the answer also denied the allegations contained in the amendment so filed by the plaintiffs to the amended and supplemental bill.

The master, on the 12th of April, 1886, filed a supplemental report, bringing down the account to the 1st of April, 1886, and finding to be due to the defendants on that day $45,342.86.

The case was brought to a hearing before Judge Blodgett,

and he filed his opinion on the 24th of May, 1886 ( 27 Fed. Rep. 537 ). He adhered to his former views.

On the 28th of May, 1886, Robertson, Templeton and Mc-Allister filed an answer disclaiming all interest in the property in controversy, admitting that the plaintiffs were entitled to the relief prayed by them, and consenting to the entry of such decree as might seem proper to the court.

The court, on the 1st of July, 1886, made a final decree, adjudging that there was due to the defendants, the widow, heirs and representatives of the estate of David R. Greene, deceased, on their lien on the premises in question, $45,342.86, with interest thereon from April 1, 1886, at six per cent per annum ; that the plaintiffs pay to them that sum, with the interest, within 90 days, in redemption of all lien of the defendants on the premises; and that, on such payment being made, the defendants convey the premises to the plaintiffs by a quit-claim deed.

The widow, heirs and representatives of the estate of David R. Greene, deceased, with Peabody & Cummings, appealed to this court from that decree.

*Mr. John Lowell* and *Mr. George L. Paddock*, for appellants, cited: *Anderson* v. *Strauss*, 98 Illinois, 485 ; *Strother* v. *Law*, 54 Illinois, 413 ; *Bergen* v. *Bennett*, 1 Caines' Cas. 1 ; *S. C.* 2 Am. Dec. 281 ; *Hall* v. *Bliss*, 118 Mass. 554 ; *Hunt* v. *Rousmaniere*, 2 Mason, 244 ; *Sargent* v. *Helton*, 115 U. S. 348 ; *Bank* v. *Sherman*, 101 U. S. 403 ; *Gifford* v. *Helms*, 98 U. S. 248 ; *Jenkins* v. *International Bank*, 106 U. S. 571 ; *Wisner* v. *Brown*, 122 U. S. 214 ; *Miller's Heirs* v. *McIntyre*, 6 Pet. 61 ; *Phelps* v. *Illinois Central Railroad*, 94 Illinois, 548 ; *Dunphy* v. *Riddle*, 86 Illinois, 22 ; *Crowl* v. *Nagle*, 86 Illinois, 437 ; *Norton* v. *De la Villebeuve*, 1 Woods, 163 ; *McIver* v. *Ragan*, 2 Wheat. 25 ; *Phelps* v. *Elliott*, 29 Fed. Rep. 53 ; *Nugent* v. *Boyd*, 3 How. 426 ; *Jerome* v. *McCarter*, 94 U. S. 734 ; *Eyster* v. *Gaff*, 91 U. S. 521 ; *In re Grinnell*, 9 Nat. Bankr. Reg. 137 ; *Sedgwick* v. *Grinnell*, 9 Ben. 429 ; *In re Moller*, 8 Ben. 526, affirmed 14 Blatchford, 207 ; *Bradley* v. *Adams Ex. Co.*, 3 Fed. Rep. 895 ; *Goddard* v. *Weaver*, 6 Nat. Bankr. Reg. 440 ;

*Washburn* v. *Tisdale*, 143 Mass. 376; *Ex parte Belcher*, 2 Deac. & Ch. 587; *Ex parte Rolfe*, 3 Mont. & Ayr. 305; *Ex parte Geller*, 2 Madd. 262; *McHenry* v. *La Société Française*, 95 U. S. 58; *Dudley* v. *Easton*, 104 U. S. 99; *In re Iron Mountain Co.*, 9 Blatchford, 320; *In re Divard*, 9 Nat. Bankr. Reg. 8, 12; *Ex parte Cooper*, L. R. 10 Ch. 510.

*Mr. Charles B. McCoy* and *Mr. Charles E. Pope* (with whom was *Mr. Alexander McCoy* on the brief) for appellees.

I. The trustee's sale, having been made after the adjudication in bankruptcy, without leave of the bankrupt court, while the equity of redemption was part of the bankrupt's estate, and before the assignee was appointed and capacitated to exercise the right of redemption, was subject to the right of the assignee, (which became vested in him, when he was appointed, as of August 31st, 1878, the date of filing of the petition in bankruptcy,) to redeem and discharge the mortgage; and the sale was void as against the assignee and his grantees, and redemption should be allowed on the application now made by the grantees of the assignee holding a conveyance of this right of redemption.

We submit that the following authorities fully sustain the foregoing proposition of law:

*Yeatman* v. *Savings Institution*, 95 U. S. 764; *Conner* v. *Long*, 104 U. S. 228; *Bank* v. *Sherman*, 101 U. S. 403; *In re Grinnell*, 9 Nat. Bankr. Reg. 137 (Blatchford, J.); *Foster* v. *Ames*, 2 Nat. Bankr. Reg. 455 (Lowell, J.); *In re Snedaker*, 3 Nat. Bankr. Reg. 629, 636 (Hawley, J.); *Davis Ass'n* v. *Anderson*, 6 Nat. Bankr. Reg. 145 (Treat, J.); *Smith Ass'n* v. *Kehr*, 7 Nat. Bankr. Reg. 97 (Treat, J.); *In re Brinkman*, 7 Nat. Bankr. Reg. 421 (Blatchford, J.); *Hutchings Ass'n* v. *Muzzy Iron Works*, 8 Nat. Bankr. Reg. 458 (Fox, J.); *Whitman* v. *Butler*, 8 Nat. Bankr. Reg. 487 (Knowles, J.); *Barron* v. *Newberry*, 1 Bissell, 149 (McLean, J., Drummond, J., concurring); *Dooley* v. *Va. Fire Ins. Co.*, 2 Hughes, 482 (Hughes, J.); *Ex parte Christy*, 3 How. 292; *Houston* v. *City Bank*, 6 How. 486.

II. The appellees acquired the assignee's right to redeem. It was undoubtedly the intention of Congress, in enacting the bankrupt law, that the assignee's sale and deed to the purchaser — in a case of this kind — should transfer to him the whole title of the assignee, including all objections to the trustee's voidable sale, together with the right of redemption from the trust deed. The mere fact that he advertised to sell, subject to a prior lien, could no more waive any right which he was selling to the purchaser, than an administrator would by advertising· the equity of redemption to land of his decedent, subject to a prior lien or mortgage.

III. This case was not within the terms of the statute of limitations. . The limitation clause of the bankrupt act, by its terms, only applies to contests between an assignee in bankruptcy and a person claiming an interest adverse to such assignee. *Bailey* v. *Glover*, 21 Wall. 342; *Sargent* v. *Helton*, 115 U. S. 348; *Bartles* v. *Gibson*, 17 Fed. Rep. 293; *Gifford* v. *Helms*, 98 U. S. 248; *Jenkins* v. *International Bank*, 106 U. S. 571; *Wisner* v. *Brown*, 122 U. S. 214.

IV. The Trustees' sale was improper while the original bill was pending. *Freedman's Saving and Trust Co.* v. *Earle*, 110 U. S. 710; *Minnesota Co.* v. *St. Paul Co.*, 2 Wall. 609; *Kervison* v. *Stewart*, 93 U. S. 155; *Ryan* v. *Newcomb*, 125 Illinois, 91; *Miller's Heirs* v. *McIntyre*, 6 Pet. 61; *Phelps* v. *Illinois Central Railroad*, 94 Illinois, 548; *Crowl* v. *Nagle*, 86 Illinois, 437; *Dunphy* v. *Riddle*, 85 Illinois, 22.

V. Where the interest adverse to that of the assignee has been acquired through fraud and the fraud has been concealed, the two years' statute of limitation does not commence to run until the discovery of the fraud. *Bailey* v. *Glover, supra*; *Upton* v. *McLaughlin*, 105 U. S. 640; *Rosenthal* v. *Walker*, 111 U. S. 185; *Traer* v. *Clews*, 115 U. S. 528; *Bartles* v. *Gibson*, 17 Fed. Rep. 293; *Retzer* v. *Wood*, 109 U. S. 185; *Kilbourn* v. *Sunderland*, 130 U. S. 505; *De Bussche* v. *Alt*, 8 Ch. Div. 286.

MR. JUSTICE BLATCHFORD, after stating the case as above reported, delivered the opinion of the court.

The plaintiffs claim a right to redeem from the sale to Greene, made by Peabody as trustee, or from the trust deed under which that sale was made, on payment of the mortgage debt, (1) as owners of Robertson's equity of redemption by virtue of their purchase from the assignee in bankruptcy; and (2) as judgment creditors of Robertson, having a lien on the property by virtue of their judgment, prior in time to the sale by Peabody as trustee, and by their purchase of the property at the sale under the execution issued on their judgment.

They rest their claim under their purchase from the assignee in bankruptcy, first, on the ground that the sale by Peabody as trustee was made after the commencement of the proceedings in bankruptcy, and after the adjudication thereon, before an assignee was appointed, and without leave of the bankruptcy court, and was void as against such assignee and those claiming under him, that the property was still subject to the right of redemption by the assignee, and that such right has been conveyed by him to the plaintiffs; second, on the ground that there was a collusive agreement made with Robertson, by Peabody as agent for Greene, giving to Robertson the right to redeem from the sale by Peabody, and that such right of redemption passed from Robertson to his assignee in bankruptcy, and from the latter to the plaintiffs.

The claim of the plaintiffs to redeem, as judgment creditors of Robertson, is based on the allegation that they were led by the wrongful conduct of the defendants to believe that the property was subject to the deed of trust to Gallup, as well as to that to Peabody; that they were not allowed an opportunity to pay off the incumbrance before the sale by Peabody, although they were ready and willing to do so; that, by reason of the collusive agreement referred to, the sale by Peabody was part of a scheme to hinder them in collecting their judgment, by cutting off their lien on Robertson's equity of redemption, and giving the property back to him, after he should have been discharged in bankruptcy from the judgment; that the sale by Peabody was not properly advertised; that the plaintiffs had no notice of such sale prior to its being made; that such notice was intentionally withheld from

them; that the sale by Peabody, with the prior incumbrance of the trust deed to Gallup apparently standing against the property, when such incumbrance had been paid, was made with a view to prevent competition in bidding at the sale; that the property was sold in bulk, and not offered for sale in parcels; and that it was sold for an inadequate price.

But we do not find it necessary to consider any of these questions, because we are of opinion that the right of action of the plaintiffs, under their title derived from the assignee in bankruptcy, was barred by the two years' limitation enacted by the bankruptcy statute.

Section 5057 of the Revised Statutes provides as follows: "No suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest, touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee.".

It is contended for the plaintiffs that the limitation provided by section 5057 applies only to the case of a contest between an assignee in bankruptcy and a person claiming an interest adversely to such assignee, touching property of the bankrupt, in a suit to which the assignee is a party; that when the assignee transferred his rights to Pratt, who acted for the plaintiffs, on the 17th of June, 1880, under the sale to Pratt made on the 24th of April, 1880, the statute ceased to run, and the interest which thus passed from the assignee then ceased to be within the terms of the bankruptcy statute of limitation, and became subject to the ordinary statute of limitation, and that the two years' limitation had not run on the 24th of April, 1880, or on the 17th of June, 1880, the register's deed to the assignee in bankruptcy having been made on the 24th of July, 1879.

But we are of opinion that the right which passed to the assignee, to file a bill to redeem, began to exist on the 24th of July, 1879; that, as the bankruptcy statute of limitation began then to run against such right in the hands of the assignee, it continued to run after such right passed to the plaintiffs, by

the assignee's deed to Pratt on their behalf, of June 17, 1880, made in pursuance of the sale of April 24, 1880; that the two years' statute of limitation bars the right asserted by the plaintiffs in their bill, in like manner as it would have barred the right of the assignee to redeem, if he had never made any sale or conveyance to Pratt, and if he were now the plaintiff in this suit; that the suit cannot be regarded as having been brought against the widow, heirs and representatives of David R. Greene until the supplemental bill was filed, on the 17th of September, 1881, when, for the first time, the sale by Peabody, as trustee, to Greene, was drawn in question in this suit; and that, as more than two years elapsed between July 24, 1879, and September 17, 1881, the two years' bar of the statute is complete.

That the two years' bar of the statute applies in favor of a purchaser from an assignee in bankruptcy has been decided by this court.

In *Gifford* v. *Helms*, 98 U. S. 248, the assignee in bankruptcy was appointed in May, 1868, and sold all the assets of the bankrupt to the plaintiff in May, 1871. Afterwards the plaintiff brought suit to set aside an alleged fraudulent conveyance which had been made by the bankrupt in June, 1867. It was held that, as the right of action on the part of the assignee in bankruptcy was barred in May, 1871, it was barred as against the plaintiff. This could not have been held if the two years' statute of limitation had been regarded as one applying only in a suit brought by the assignee. It was said by the court, that if the conveyance sought to be impeached was made in fraud of creditors, the equities in controversy were vested in the assignee in bankruptcy when he was appointed, and his right of action commenced at the time the assignment was made to him, and he might have pursued such right at any time thereafter; that, as the plaintiff claimed as purchaser from the assignee, he did not acquire, under the sale made to him by the assignee, any greater rights than those possessed by the latter; that those rights were acquired by the assignee in May, 1868; that throughout the period intervening between that date and May, 1871, the equities in controversy were held

by the defendant adversely to the supposed right of the assignee; and that the right, if any, of the assignee, was barred by the two years' statute of limitation, before the purchase by the plaintiff.

In *Wisner* v. *Brown*, 122 U. S. 214, it was held that an assignee in bankruptcy cannot transfer to a purchaser the bankrupt's adverse interest in real estate in the possession of another claiming title to it, if two years have elapsed from the time when the cause of action therefor accrued to the assignee; and that the right of the purchaser in such case is as fully barred by the bankruptcy statute of limitation as is that of the assignee. In that case, the suit was brought by a person who had purchased property of the estate from the assignee in bankruptcy, and received a conveyance thereof, more than seven years after the title of the assignee accrued. The defendants pleaded the two years' bankruptcy statute of limitations. At the time of the appointment of the assignee the property sued for was held adversely by the defendants. The court held that the assignee could not, after two years from the time of his appointment had expired, himself bring an action to recover the property, or, by selling the lands to a third person after such time had expired, enable the latter to maintain an action therefor; and it quotes with approval the remark made in *Gifford* v. *Helms*, ( *supra,* ) that the purchaser from the assignee did not acquire by his purchase any greater rights than those possessed by the latter.

These cases show that a conveyance by the assignee in bankruptcy cannot prevent the operation of the bar of the statute against the grantee, when it has already run against the assignee, or bring into action a new period of limitation, dating from the time of the conveyance. Nor can it interrupt the running of the statute against the claim or right, when it has once commenced to run as against the assignee. The purchaser takes the right *cum onere,* subject to the continuance of the running of the statute, and subject to the fact that a part of the two years has already run as against the claim or right, while it was in the hands of the assignee, and to the consequence that when sufficient additional time shall

have run against it, in the hands of the purchaser, to make up the entire two years, the claim or right will be wholly barred. No initiation of a new period of limitation, under any statute, begins to run in favor of the purchaser at the time of his purchase, whether the two years wholly elapsed, or only a part thereof elapsed, while the claim was owned by the assignee.

But the plaintiffs seek to take the case out of the bar of the statute, by alleging that they were ignorant of their rights, and did not discover the facts relating to the sale by Peabody as trustee, and the other matters set up in their supplemental bill, until the 24th of April, 1880, which was within two years of September 17, 1881; and that the sale by Peabody was kept secret by the defendants, as far as possible, although the plaintiffs used diligence to discover the facts.

Even if the allegations in the supplemental bill and in the amendments thereto be regarded as sufficiently charging a fraudulent concealment by the defendants of the facts of the case, from the assignee in bankruptcy, or from Pratt, or from the plaintiffs, we do not think the evidence establishes any such fraudulent concealment.

With the petition in bankruptcy, filed August 31, 1878, there was filed a schedule naming the creditors of Robertson holding securities, giving the name of David R. Greene as one of such creditors, his place of residence, the date of the contracting of his debt, its amount, a statement that the security was a trust deed on property in Chicago, a description of such property, the street and number where it was situated, and the name of Peabody as trustee. It also disclosed the fact that the only incumbrance on the property was the trust deed to Peabody, thus excluding the idea that the trust deed to Gallup was in force.

Here was information, accessible to the assignee in bankruptcy when he was appointed, information which he was bound to take notice of, information equally accessible to the plaintiffs, being in a public record, which information referred the assignee and the plaintiffs to David R. Greene for full particulars as to the property in question, and the transactions in regard to the trust deed. The petition in bankruptcy was

filed thirty-seven days before the sale of the property to Greene by Peabody as trustee. Moreover, in the petition of the plaintiffs, filed in the bankruptcy court October 5, 1878, two days before the sale by Peabody, and sworn to by the agents of the plaintiffs, the contents of the schedules in bankruptcy of Robertson are referred to, and it is stated that among the assets set forth in such schedules is the property in question, identifying it. This shows that information was actually had by such agent, at that time, of the facts before set forth as contained in one of such schedules, as to the particulars of the trust deed to Peabody, and as to who was the holder of the note secured by it and where he resided. That petition was filed more than nine months before the assignee in bankruptcy was appointed.

The rights of the plaintiffs must depend wholly upon such right of redemption as existed in Robertson, and passed to his assignee in bankruptcy, and from the latter to the plaintiffs. That being extinguished, no other right exists, and the plaintiffs have no right to redeem through any separate title acquired under their judgment against Robertson. They did not become, by the recovery of their judgment, or by anything done under it, the successors of Robertson in respect of any right of redemption, but they must follow and acquire their only title to such right, through the assignee in bankruptcy. Moreover, whatever right to redeem they could have acquired by virtue of their judgment was waived by them by their petition of March 25, 1880, to the bankruptcy court, and by their procuring the property in question to be sold by the assignee in bankruptcy, and its proceeds to be applied on their judgment. At their own suggestion the equity of redemption, which was sold by the assignee, was thus put beyond their reach.

*The result of these views is that the decree of the Circuit Court must be reversed, and the case be remanded to that court with a direction to enter a decree dismissing the bill, with costs.*