No. 12,800.

THE GULF STATES LAND AND IMPROVEMENT COMPANY VS. WIDOW V. WADE.

SYLLABUS.

1st. A person cannot cause certain property to be seized and sold as the property of his debtor, receive the price of adjudication from the adjudicatee, deal repeatedly with him afterwards as owner, and afterwards, proceed against him by petitory action to recover the same property as being himself the owner under a claim of an ownership antedating the sale. This rule applies to the State in the enforcement of its taxes as well as to a private individual.

2nd. The provisions of Section 2519 of the Revised Statutes "prohibiting no-

taries from executing acts of transfer of real estate unless the State, parish and municipal taxes due on the same be first paid, to be shown by tax collector's receipt or certificate to that purpose," do not have the effect of cutting off from parties claiming rights under an act executed in violation of that prohibition from introducing a copy of the act in evidence. The act, if otherwise regular, should be admitted, leaving its effect to be determined afterwards.

ON APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Charles F. Claiborne* for Plaintiff in Suit, Defendant in Injunction, Appellant.

*A. B. Philips* for Defendant in Suit, Plaintiff in Injunction, Appellee.

Argued and submitted November 7, 1898.
Opinion handed down November 21, 1898.
Rehearing refused, reasons assigned, February 6, 1899.

The opinion of the court was delivered by

NICHOLLS, C. J. Plaintiff alleging that he had bought certain described property from D. Negrotto, Jr.; that the latter had acquired the said property from the State of Louisiana at an adjudication of the same to him by the State tax collector acting in the matter of said adjudication under the provisions of Act No. 80 of 1888, in order to pay the taxes of 1881 and 1882 due on said property; that the State of Louisiana itself had had said property adjudicated to it in enforcement of the tax of 1881, as would appear by Act of January 17th, 1885, by act before Spearing, notary, and for the tax of 1882, as would appear by act before the same notary, of February 4th, 1885, (the said taxes of 1881 and 1882 having been assessed against said property in the name of Sarah Jane Dunbar), prayed for and obtained from the Civil District Court, a writ directed to the sheriff of the parish of Orleans commanding him to place it in possession of said property after three days' notice to Widow Virginia Wade, the occupant of the property.

Execution of said writ was stayed by a writ of injunction from the said court at the instance of Mrs. Virginia Wade. In her petition

FIFTY-FIRST ANNUAL REPORTS, 1899.          253

Gulf States Land and Improvement Co. vs. Wade.

for injunction she referred to the allegations of the petition upon which the writ of possession had issued and averred that the sale upon which the plaintiff declared, was absolutely null and void; that it conveyed nothing to the purchaser thereat, for that said property was assessed for the years 1881 and 1882 in the name of Sarah J. Dunbar, and that, at that date she was not living.

That on the 1st day of October, 1887, the State sold this property to Richard C. Wade, deceased husband of petitioner, and that he and his heirs had paid the taxes ever since. That no notice was ever served upon petitioner of any sale or intended sale on the part of the State to the plaintiff, or its vendor.

That the sale in 1887 to petitioner's husband cancelled all previous taxes due to it.

That petitioner and her husband have been in undisturbed possession for more than ten years prior to the asserted claim of plaintiff; that the taxes of 1881 and 1882 were and are prescribed.

Plaintiff in injunction, by supplemental petition, averred that when the assessments for the years 1881 and 1882, in the name of Sarah J. Dunbar were made, she was dead. That the sale to Negrotto, Jr., was null and void, for that at the time of the same, Sarah J. Dunbar had long been dead, and her succession was never opened, and no notice to her was or could be given of said contemplated sale. That she (plaintiff) had had possession continuously of this property under title translative of property for more than ten years previous to the institution of these proceedings and plaintiff's demand is barred by the prescription of five and ten years.

The Gulf Improvement Company denied all and singular the allegations of the petition for injunction and averred that it disclosed no cause of action. It prayed in the event that its title be annulled it have judgment in its favor for fifty and 27-100 dollars, with ten *per cent.* interest from June 20th, 1889, until paid, for the further sum of one hundred and twenty-three 67-100 dollars, with ten *per cent.* interest from date of payment until paid, and for the further sum of five 60-100 dollars, with two *per cent.* per month interest from payment until paid, alleging that it had paid fifty 27-100 dollars as the price of the sale to him, and had paid the city the taxes for the years 1885 to 1891, both inclusive, and the State the tax of 1891 the sum of five 60-100 dollars, to whose rights it was subrogated.

The District Court rendered judgment in favor of the plaintiff in

injunction, Mrs. Virginia Wade, and against the defendant in injunction, the Gulf States Land & Improvement Company, perpetuating the preliminary injunction, and enjoining the defendant in injunction and the sheriff from further proceeding in the seizure, and from disturbing the said plaintiff, Widow Virginia Wade, in her possession of the property described in the suit (describing it). It further decreed that the title set up by the Gulf States Improvement Company be annulled. It further decreed that the Gulf States Improvement Company have judgment against Mrs. Virginia Wade for the sum of one hundred and seventy-three 94-100 dollars, with ten *per cent.* interest upon fifty 27-100 dollars thereof from June, 1889, until paid, and with ten *per cent. per annum* interest upon one hundred and twenty-three 67-100 dollars thereof from the date the portions thereof were paid to the city of New Orleans for the city taxes for the years 1885 to 1891 inclusive, and for the further sum of five 60-100 dollars for State tax of 1891, and for forty-eight dollars for city taxes of 1894, 1896 and 1897, with interest as above.

The Gulf States Improvement Company moved for a new trial, alleging that there was an error in the calculation in the judgment rendered in omitting to reimburse to it the State tax of 1891, five 60-100 dollars, the city tax of 1894, sixteen dollars, the city tax of 1896, sixteen dollars, the city tax of 1897, sixteen dollars, and that said judgment in other respects was contrary to law. This motion being overruled, the company appealed.

On November 16th, 1880, Mrs. Sarah Jane Dunbar, a resident of the State of New York, by public act before Andry, notary, made a donation to Mrs. Sophia Dunbar, widow of Richard Wade, of the usufruct during the life of the donee, of a certain lot of ground fronting on Erato street, in the square bounded by Erato, Clio, Liberty and Franklin streets, the donation being on the condition that Mrs. Wade should keep the property in good repair and pay the annual taxes upon it. The donee took possession of the property donated.

It is admitted that Mrs. Dunbar's succession was opened in New York in 1884.

We find in the record two acts of adjudication and transfer of this property by the State Tax Collector to the State of Louisiana. The first of these acts was by notarial act before Spearing, notary, of date of the 17th of January, 1885, in which it is recited that (acting under Act No. 77 of 1880) he had on the 14th day of June, 1884, adjudicated

the same to the State in enforcement of the taxes assessed on said property in the name of Sarah Jane Dunbar due on the same for the year 1881.

That the total amount for which the same was adjudicated to the State, including taxes of 1881, interest on same to date of adjudication, costs, fees, commission, advertisement, etc., was seventeen 44-100 dollars.

The second act was by notarial act, bearing date 4th of February, 1885, before the same notary, in which it is recited that the State Tax Collector, acting under Act No. 96 of 1882, had in enforcement of the taxes on this property for the year 1882, assessed in the name of Sarah Jane Dunbar, adjudicated the same to the State on the 22nd day of November, 1884. That the total amount for which the property was adjudicated, including the taxes of 1882, interest on same to date of adjudication, costs, commissions, advertisement, etc., was fourteen 04-100 dollars.

On the 1st day of October, 1887, by act before Spearing, notary, the State Tax Collector executed a deed of adjudication and transfer of this same property to R. C. Wade. The act recited that said property was so adjudicated on the 14th May, 1887, in the enforcement by him, under Act No. 98, of 1886, of the taxes for the year 1886, in the name of Widow Sophia Wade (usufruct).

That the property was adjudicated to R. C. Wade, he being the last and highest bidder, for the sum of sixteen 88-100 dollars, the same being the total amount of State taxes due on said property for the year 1886, interest, commission, etc. The State Tax Collector acknowledged to have received payment of the price of adjudication. In the act the purchaser assumed and promised to pay all taxes with interest and costs thereon due, by or on account of said property still remaining unpaid, whether State, city or otherwise.

The adjudicatee took possession of the property, and he, his widow and heirs, have been in possession thereof for about twelve years.

On the 15th of October, 1891, by act before Wolfson, notary, the State Tax Collector executed a deed of adjudication of this same property to D. Negrotto, Jr. The act recited that the tax collector made said adjudication under the provisions of Act No. 80 of 1888.

The act recited that within two months after the expiration of the year in which the property could be redeemed the tax collector had

made out a complete list of all immovable property bid in for and adjudicated to the State for taxes for the year 1880, and subsequent years as shown by the records in the conveyance office, or in the office of the recorder of mortgages, which had not been otherwise disposed of by the State, and not redeemed within the time prescribed by law. That he had transmitted this list to the auditor for comparison with the record of the property adjudicated to the State on file in his office, and said list had been returned to him, the collector, approved; that he had thereupon proceeded to advertise for sale all property appearing upon said list which had been theretofore bid in for and adjudicated to the State for the unpaid taxes of 1880 and subsequent years, which had not been redeemed within the time prescribed by law. That the property was advertised by a condensed description, containing the name of the party in whose name the property was adjudicated to the State, or only the name of the party who claimed to be the owner thereof, and the year for which adjudicated, and the amount of adjudication. That having complied with all the requirements of the law he had offered all these properties, among which was this particular property, for sale, and had adjudicated this property on the 20th of June, 1889, to D. Negrotto, Jr., he being the last and highest bidder for the sum of forty-two 27-100 dollars, the said price bid and paid for said property being in full and final payment of all State taxes for the years 1881 and 1882, for which the property was adjudicated to the State together with all costs thereon due and exigible at the time the property was adjudicated to the State, the purchaser taking the property subject to all subsequent taxes, State, parish and municipal. The tax collector acknowledged to have received forty-two 27-100 dollars from D. Negrotto and proceeded in the name of the State to transfer the property to him, "giving him an absolute and perfect title without any claim thereto by any former owner and free from all mortgages, liens, privileges and encumbrances whatsoever, except all unpaid municipal taxes and all State, parish and municipal taxes which had become due and exigible subsequent to the adjudication of the property to the State.

The purchaser declared in the act that he assumed and promised to pay all the State and municipal taxes on said property, which had become due and exigible subsequent to the date of the adjudication.

The act recited that under the terms and provisions of Act No. 80 of 1888, the property was advertised and offered for sale as stated, to

enforce the provisions of said act, and for cash, payable in current
money of the United States at the time of adjudication for an amount
not less than the total amount for which the property was adjudicated
to the State, together with twenty per cent. thereon, and all costs of
enforcing said Act No. 80 of 1880, which were as follows:

Dollars. Cents.   Dollars. Cents.

Total amount of adjudication to the State................$42.27

Twenty per cent. thereon .................................

Costs and advertising ...................................

In the body of the act it was declared that the property transferred
was the same property acquired by Sarah J. Dunbar from P. H.
Keenan, and the same property acquired by the State under Acts Nos.
77 of 1880 and No. 96 of 1882, as would appear by acts of sale of
June 14th, 1884, and November 22nd, 1884, and January 17th, 1885,
and February 24th, 1885.

In the record is a receipt bearing date, New Orleans, June 28th,
1887, signed by D. Negrotto, Jr., in which he declared that he had
received from R. C. Wade twenty-five dollars on account of forty-one
88-100 dollars, and the balance of sixteen 88-100 dollars to be paid by
the said Wade, on or before the 28th of September, 1887, in considera-
tion of which he would then transfer, sell and assign unto the said
Wade all his right, title and interest in and to one lot of ground and
improvements in the First district of this city, in the square No. 324,
bounded by Franklin, Liberty, Clio and Erato streets, being the same
property acquired at State Tax Collector's sale, May 14th, 1887.
Signed. D. Negrotto, Jr. Balance due, sixteen 88-100 dollars.

No explanation is given of this receipt, but it will be seen that the
sum of sixteen 88-100 dollars is the same amount which is mentioned
in the act of transfer of October, 1st, 1887, from the State to R. C.
Wade, as being the price of the adjudication of this property to R. C.
Wade and therein acknowledged to have been received by the tax
collector from R. C. Wade.

The probability is that Negrotto was the actual adjudicatee of the
property at the sale of the 14th of May, 1887, but in consideration of
the payment to him of twenty-five dollars, and the payment by Wade
of the price of adjudication, sixteen 88-100 dollars, Negrotto permit-
ted the transfer to be made by the tax collector directly to Wade.

The special feature of this case is that the State, after having
caused the property to be adjudicated to itself on January 17, 1885,

and February 4th, 1885, for the taxes of 1881 and 1882, assessed in the name of Sarah Jane Dunbar, subsequently ignored the adjudications to itself and the title acquired thereunder, and proceeded as a creditor or *quasi* creditor against this same properety for the taxes of 1886 as assessed in the name of Sophia Wade, and sold this property to a third person, R. C. Wade, who, under the title so conveyed, took possession of the property, and has held it ever since.

The evidence of this fact is shown by a copy of the act of transfer to R. C. Wade, annexed to a bill of exceptions reserved by plaintiff in injunction to the refusal of the District Court to allow said act to be introduced on objection made that the act did not show on its face a recital that all the taxes then due on the property had been paid as required by section 73.

We think the act should have been permitted to be introduced in evidence, leaving its effect to be ascertained afterwards. It was unquestionably true that it was under the adjudication so made, whether rightly or wrongly made, that R. C. Wade took and has ever since held possession of the property, and that the act evidences correctly the facts stated therein. If the facts stated left the adjudication without effect to convey title, still it left defendant's subsequent possession to rest on color of title, and that he was permitted to show by and through the act. As the basis or commencement of defendant's claim she was authorized to show it and have it passed on.

The question is whether the State having caused this property to be transferred to a third person, a vendee, by proceedings directed by itself against this property as a creditor for taxes assessed in 1886 not in the name of Sarah J. Dunbar, but of Sophia Wade, could, after permitting the vendee to take possession under his title to pay taxes on it for several years under this title, suddenly, without notice to the vendee of the existence of prior taxes or any demand upon him, or notice of intended sale, have the property advertised and sold, not for any taxes due by the vendee, R. C. Wade, or Sophia Wade, but by Sarah J. Dunbar, as far back as 1881 and 1882, the payment of which very taxes the State had enforced by sale and adjudication made to itself a number of years before. It will be perceived that the transfer to R. C. Wade was made through proceedings as a creditor acting as against a third person's property, while the transfer by it to Negrotto was in the capacity of an owner selling property belonging to it to recoup itself for a payment of the taxes in lieu of which it had been

forced to take the property. If the State had sold this property to R. C. Wade in 1887, acting avowedly in so doing as an owner, as it did subsequently in attempting to sell to Negrotto, the position of affairs would be very different from that which is presented now.

R. C. Wade took possession of the property "under color of title" at least, through proceedings inaugurated by the State itself substantially against a declared debtor to the State. It has been held in undisturbed possession ever since until disturbed by a party claiming "ownership" of the same under an "ownership" thereof by the State, at the time of the sale to R. C. Wade.

This particular proceeding was initiated by a demand for "possession" of the property, but the action is clearly a "petitory" one, directed against the party in possession. The petition of the Gulf States Improvement Company contains none of the allegations essential to a "possessory" action. Plaintiff demands possession based upon an asserted title. The title is based upon an extra judicial proceeding to which the defendant was in no way privy, and she cannot be deprived of her rights by summary proceedings for mere possession. The plaintiff, like any other plaintiff in a petitory action, must rely upon the strength of his own title, not upon that of the weakness of his adversary.

We do not think that the title he advances can stand, based as that title is, upon an assertion of ownership of the same property in the State on the 20th of June, 1889. We do not think the State can legally disregard its own proceedings in 1887. It is true the State cannot be called directly into a suit in warranty, but where it has undertaken to transfer or convey to a third person, rights inconsistent with, and clashing with rights already conveyed through its own instrumentality and action to another and this transferree attempts, by petitory action, to enforce these rights so attempted to be conveyed, he can be successfully held in check through the maxims *"Quem de evictione tenet actio,"* and *"Nemo plus juris."*

A person is not permitted to seize certain property as belonging to his debtor, sell it to a third person, receive from the purchaser the price of adjudication, deal with him afterwards repeatedly as owner, and then afterwards, either personally, or through some one holding under him, bring a petitory action to recover the property on the ground that at the time of the seizure and sale, the property already

belonged to him, and all this without any attempt to bring about a *restitutio in integrum.*

There are two facts to be additionally noted in connection with what we have said. The first is that the Act of 1886, under which the property was sold to R. C. Wade, did not call for the assumption by the purchaser of antecedent taxes, as does the Act of 1888. Payment of price of adjudication conveyed title. The second is, that the Act of 1888, under which this property was attempted to be sold to Negrotto, after Wade had acquired title in 1887, limits the sales to be made under it to properties which had been adjudicated to the State, and not disposed of by it. This property had unquestionably been disposed of by the State when attempted to be sold, as owner, in 1891, not disposed of, it is true, as owner, but as a creditor. The mere method of disposition did not take the property out from its position of non-liability to sale under the provision of the Act of 1888.

We think the judgment correct, and it is hereby affirmed.

## ON APPLICATION FOR REHEARING.

NICHOLLS, C. J. When the State has become the adjudicatee of property sold at tax sale, it is not obliged to take immediate possession, but may permit the original owner, or others to hold possession of it. If the former owner does not redeem it, the State may (under legal authority) sell this property as any other owner could do, on such terms and conditions as it sees fit. The Act of 1888 authorizes it to sell at auction the properties held by it as adjudicatee upon the condition that the purchaser shall pay all taxes, State, parish and municipal, existing on them at the time of the sale of the same, and making the vesting of title in the purchaser conditioned upon the fact of payment. Sales of this kind are sometimes spoken of as "tax sales;" but the term is misapplied. A tax sale is a sale made of property proceeded against by the State as belonging to some one other than itself, in enforcement of taxes due by that property and its owners. The sales in question, though they may result in placing in the treasury an amount equal to the amount of taxes which would have been on it, had the property belonged to some one else, are not made in the enforcement of taxes, for there are in reality no taxes upon it, as the property of the State itself is not taxed. The declaration in the advertisement of sale that the purchaser should pay all the taxes upon it,

at the time of the sale, is nothing more than a declaration as to the amount the property must bring at the sale, and the character of the sale is not other or different than it would have been, had the tax collector made a calculation of the amount of these taxes and omitting all reference to taxes had declared that the purchaser should pay that particular amount as a condition to obtaining title.

Had the State, being as it was, the adjudicatee of this property through the sales made in enforcement of the taxes of 1880 and 1881, as the property of Mrs. Sarah Dunbar, sold the property, as owner, to R. C. Wade, and had he failed to make payment as required by the terms and conditions of the sale at which he purchased, and had the State then, as being owner of the same, sold the property to Negrotto, we would have had before us a case identical with that of Martinez, reported in 42 An. 677, and Remick vs. Lang, reported in 47 An. 914, and our decision would have been controlled by the principles announced in these cases, but the State did nothing of the kind.

Instead of selling the property, as being the owner thereof, it proceeded as a *quasi* creditor against it as being the property of Sophia Wade and as owing, under her ownership, the taxes of 1886, and caused the property to be adjudicated to R. C. Wade, a third party, so far as the record shows. It gave a deed of the property to R. C. Wade, who went into possession as owner under this title, and has (himself and his heirs), held possession ever since, paying taxes which the State received.

This title has never been set aside or attacked, nor has it been shifted back from Wade to the State by any proceedings whatever. After vesting title in Wade, under proceedings thus taken out by itself, the State, ignoring this title, undertook to sell the property as if these proceedings had never taken place and as if it had been continuously the owner of the property to Negrotto who, thereupon, instituted this petitory action against Wade. Wade met the attack by setting up and showing the fact that he held the title to this property under proceedings which the State (Negrotto's own vendor) had itself instituted and carried on as a *quasi* creditor against it as the property of Sophia Wade, and which proceedings culminated in a sale at which he had bought, and he contended that this title, antedating that of Negrotto, effectually disposed of any title subsequently attempted to be made by the State to its prejudice under a claim of ownership as existing at the date of his purchase.

In our original opinion we held this contention to be well founded, and rejected plaintiff's demand. We were of the opinion that the situation was that of a person who, having a claim against (B), should cause certain property to be seized as belonging to him, and having caused it to be adjudicated to (C) should, thereafter, sell the same property to (D) under the pretence that at the time of the adjudication to (C) it was itself the owner thereof, and (D) should bring a petitory action for the property under a title so conveyed to him. We held that the seizing creditor himself would be estopped from claiming ownership adversely to ("C") under such circumstances; that his action would be repelled by his own obligations as a warrantor, and that the same estoppel which would bar any claim on his part would bar any claim of a person holding under him. We see no reason to doubt the correctness of that conclusion.