The opinion of the court was delivered by
Monroe, J.
This is a petitiory action, against the person in possession, by Mrs. Cannon J. Adolph, on behalf of her seven minor children, to recover certain real estate which had been acquired by the father of said minors, before his marriage, and which they are said to have inherited at his death. The nominal defendant, Mrs. Richardson, discloses no interest, and the defense was assumed by Rafael Roca, as owner, but it appears from the evidence that the person who really claims ownership is Antonio Augusti and that the title was made to Roca, and his name was used, in order to enable Augusti to avoid the payment of certain taxes for which he was liable as part of the purchase price of the property, and to obtain the cancellation of the inscriptions thereof. There “was judgment in the district *1157 court for the defendant, which was reversed by the Court of Appeal, and we are asked to review the judgment of the latter- tribunal.
The facts of the case are as follows:
Adolph acquired in 1870, failed to pay taxes for several years, prior to 1880, and the property was sold for said unpaid taxes, in 1880, under Act 82 of 1884, to P. A. Bacas, for $45, plus the unpaid taxes from 1880 to 1886. Bacas paid the $45, but did not pay the taxes. Not long afterwards, he was re-imbursed his expenditure by Adolph, and gave up his interest, but there was no formal reconveyance and the title received by him from the tax collector was placed on record July 5, 1886.
In January, 1889, said property, after having been advertised in the name of Adolph — for the city taxes — for the years from 1879 to 1887 inclusive, was adjudicated by the city treasurer, to the city of New Orleans. The act confirming this adjudication was passed March 23, 1891, and registered March 24, 1891.
In August, 1891, after advertisement, in the name of Bacas, for the State taxes of 1890, the property was sold by the State tax collector, under Act 85 of 1888, to Augusti, whose title was recorded August 26, 1891. The cash price at which the adjudication was made was $19.35, being the amount of the State taxes for 1890, in addition to which the purchaser assumed and promised to pay, all other taxes on the property, State or city. Instead of complying with his obligation in this respect, however, he put the property in the name of Roca, in whose name, as an innocent third purchaser, suits were brought, in the city court, in 1894, to cancel the inscriptions for the city taxes for the years of 1880 to 1890, inclusive, and there were judgments ordering such cancellations, but reserving the rights of the city.
In October, 1895, Bacas and one Stewart executed quit claim deeds conveying the rights which they might have had in the property to ■Mrs. Adolph, as tutrix; and, in November, 1895, Mrs. Adolph, as tutrix, paid into the city treasury $201.40, in full payment of the city taxes due up to 1890, inclusive, and received from the city treasurer and city comptroller a redemption certificate whereby the city subrogated her to all its “titles, rights, liens and mortgages, incident to, and growing out of said taxes.” And, thereafter, in October, 1895, Mrs. Adolph brought the present suit.
*1158 Counsel for defendant rests his application for the review of the judgment of the Court of Appeal and his argument in support thereof upon two propositions, to-wit:
1. That the court erred in holding that the person entitled to the tax notice, under Article 210 of the Constitution of 1879, is the owner of the property.
2. That the court erred in holding that a redemption of property bid in by the city could be allowed by the city treasurer and comptroller after the year from the date of recording without special authority.
I.
It v/ill be observed, from the foregoing statement of the facts, that the adjudication to the city, in 1889, was made upon the basis of an advertisement in the name of Adolph, although the paper title to Bacas under Act 82 of 1884, had been recorded in 1886. It is true that, according to repeated decisions of this court, Bacas was not the owner of the property because he had not complied with the terms of the adjudication. Nevertheless, the title standing in his name, it was competent to assess the property in his name for the taxes which he had failed to pay. Prescott vs. Payne, 44th Ann., 650; Augusti vs. Citizens’ Bank, 46th Ann., 529; Michel vs. Stream, 48th Ann., 341; Marti vs. Wall, 51 Ann., 953. But the sale to the city was based upon asssessments for the years from 1879 to 1887, inclusive, during the greater part of which time the title stood in the name of Adolph, and for the rest, in the name of Baeás. There were, therefore, two questions which might have been raised as to the validity of the adjudication made by' the city, if there had been any one in a position to raise them. The one, as to the validity of - the assessments upon which it was based; and the other as to the notice. There were, however, but three persons concerned in the matter, the city, Adolph and Bacas and, of the three, it may well be questioned whether the two latter were in a position to complain. But we need not stop to consider that question. Neither Adolph nor Bacas made any complaint. Bacas had never really become the owner of the property, and 'had abandoned all idea and all right to become the owner by accepting reimbursement from Adolph, whilst Adolph acquiesced in the sale, and the plaintiff, representing his children and heirs, ratified it long afterwards by paying the taxes for which the property *1159 had been adjudicated and obtaining a subrogation to the rights of the city as adjudieatee. Whether the assessments were good or bad, and whether the notice should have been given to Adolph or Bacas, therefore, the title of the city was never attacked by the parties who alone could be said to have been interested in the property when it was acquired, and it was certainly good as to those'who were without interest.
That being the situation, the title of the city having been recorded March 24, 1891, the State undertook to sell the property for the State tax of 1890, under Act 85 of 1888, and after advertising it in the name of Bacas, adjudicated it, in August, 1891, to Augusti. It will be observed, however, that, at the time of this advertisement and sale, the recorded title was in the name of the city of New Orleans. Bacas had neither a legal nor an equitable title. He was not the owner and he did not appear to be the owner, and, to hold that the advertisement in his name, and the notice to him was sufficient fo-r the purposes of the sale, would be to hold that the property of one person may lawfully be sold under procedings in the name of another.
We do not concern ourselves with the question whether legislation leading to such results would be competent. It ought, at all events, to be plain, specific, and unambiguous, and we find none of that character, either constitutional, or statutory, among the laws of this State. Article 210 of the Constitution of 1879 requires that notice for the purposes of a sale for taxes, shall be given to the “delinquent.” The general laws upon the subject of the conveyance of property contemplate the payment of all taxes, as a condition precedent to every “sale, or transfer or exchange” of real estate, so that no vendor or transferror can be supposed to- occupy the position of a delinquent as to property which no longer belongs to him. R. S. 2519-20. In the contemplation of the law, therefore, the “delinquent” is he who owns the property, and has not paid the taxes, rather than his vendor, who, if the law be properly applied, could not have made title unless all taxes due at the time were paid. In Concordia vs. Bertran, 45 A., 358, it was held that the notice should be given to the owner at the time, and not to a previous owner to whom the property had been assessed.
In Johnson vs. Martinez, 40 Ann., 52, it appeared that the property had been assesssed to “F. Johnson,” who was dead; and that the proceeding to sell was conducted in the same name. This court *1160 said: “Tax sales for taxes accrued since the Constitution of 1879 must be preceded with notice to the owner, or no title passes.” And to the same effect are the decisions in Genella vs. Vincent, 50th A., 956; and Succession of Lacroix vs. Lumber Co., 49 A., 1445.
In Lague vs. Boagni, 32nd Ann., 913, it was said: “In case of non-payment of- taxes legally assessed and due, it was incumbent on the tax collector to proceed against the true owner of the land so assessed.”
II.
It is well settled that when property is sold for taxes with a right of redemption reserved to the tax debtor, and the delay allowed for such redemption expires, the title vests in the purchaser; but that he may, if he chooses, permit the debtor to redeem, notwithstanding the expiration of the delay. This, we believe, is conceded. But the counsel for the defendant (plaintiff in this court) makes the point that, whilst the city of New Orleans might have permitted Mrs. Adolph to redeem, after the expiration of the year, it was incompetent for the city treasurer and the city comptroller to do so in the name of the city without express authority from their principal.
In dealing with this identical question, in the recent case of West vs. Negrotto, 27 S. R., 75, it was held that “where an outstanding title in some third person is set up by the defendant in a petitory action, and the plaintiff produces a title from that person himself, such title must stand until set aside by the party entitled to have the sale set aside.” Scott vs. Briscoe, 37 A., 178; Bernard vs. Noel, 45th Ann., 1136; Font vs. McConnell, 46th A., 223.
We therefore conclude that the grounds of complaint urged against the judgment of the Court of AppedSl are not well sustained, and that the defendant in said judgment is not entitled to the relief prayed for.
It is therefore ordered, adjudged and decreed, tha;t said judgment remain undisturbed; that the demand herein made be rejected; and that this proceeding be dismissed at the cost of the petitioner.
Rehearing refused.