(33 South. 354.)

No. 14,302.

LEATHEM & SMITH LUMBER CO., Limited, v. NALTY et al.*

(June 21, 1902.)

BANKRUPTCY—TITLE TO ASSETS—PETITORY ACTION — DEFENSES — TAX SALE — PRESCRIPTION—TEN YEARS' POSSESSION.

1. Under the bankrupt act of 1867, the property of the bankrupt remained in him until an assignee had qualified, and the judge or register had assigned or conveyed or assigned the same by an instrument under his hand.

2. Defendant in a petitory action cannot attack the title of the actual owner, which the plaintiff advances as his own, on grounds which concern the parties to that title alone, and which they themselves do not urge.

3. A sale of property made at public auction by a tax collector as belonging to the state is not strictly a tax sale.

4. The rules controlling questions of the acquisition of the ownership of property through the prescription of 10 years by possession as owner in good faith, under a title translative of property, differ from those which determine the rights and obligations as to fruits, revenues, and analogous claims.

(Syllabus by the Court.)

Appeal from judicial district court, parish of St. Helena; Robert R. Reid, Judge.

Action by the Leathem & Smith Lumber Company, Limited, against J. B. Nalty and others. Judgment for plaintiff, and defendant Nalty appeals. Reversed in part.

Obadiah Pearson Amacker, Clay Elliott, and Milton Alexander Strickland, for appellant. Saunders & Gurley, Stephen D. Ellis, and Benjamin Moore Miller, for appellee.

*Rehearing denied January 19, 1903.

Statement of the Case.

NICHOLLS, C. J. The prayer of the plaintiffs in this suit was that J. B. Nalty, A. H. Hansford, and W. S. McIntyre be enjoined and restrained, personally or through others, from cutting or removing any timber on certain lands which they described in their petition, and of which they alleged themselves to be the owners; that writs of sequestration issue to the sheriff of St. Helena and Tangipahoa parishes, ordering them to sequestrate all the timber taken from the said lands, and also any lumber sawed from the said timber, and hold the same until further orders of the court; that writs of attachment issue to the sheriffs of St. Helena and Tangipahoa, ordering them to attach the property of J. B. Nalty, wherever found in said parishes to satisfy their claim as set up in their petition; that, after due proceedings, they have judgment decreeing them to be the owners of said lands, and that a writ of possession issue to the sheriff to place them in possession; that they have judgment against J. B. Nalty, A. H. Hansford, and W. S. McIntyre in solido in the sum of $10,000; that their sequestration be maintained, and the property sequestered be declared to belong to them; that their attachment be perpetuated, and the property attached be sold to pay petitioners' judgment, and from the proceeds they be paid by special privilege of attaching creditors; that their injunction be perpetuated, and said Nalty, Hansford, and McIntyre be perpetually enjoined from cutting or removing any timber or logs from their lands described, and for all and general relief.

320.65 acres of the land claimed and described by government subdivisions were alleged to have been acquired by Mrs. Arthemise Michel from the United States government on the 5th of August, 1858;

317.79 acres to have been purchased from the United States government by Mrs. L. E. Herwig on August 5, 1858, and March 19, 1859; and

321.82 acres on August 4, 1858, and March 19, 1859, by E. F. Herwig, the whole body of lands claimed aggregating 960 acres. It was alleged: That Mrs. Arthemise Michel owned her lands until her death, in March, 1885, and Mrs. Louise Herwig inherited same as her sole heir. That Mrs. Louise Herwig

owned the lands entered by her and those inherited from her mother until her death, July 30, 1888. That she left a last will, which was duly probated in Tangipahoa parish, by which she left all of her property to her husband, E. F. Herwig, who by judgment of court was recognized and put in possession of her estate. That E. F. Herwig sold the lands to John Leathem on the 9th day of August, 1888, and the act of sale was recorded in the parish of St. Helena. That John Leathem sold the lands to them (the plaintiffs) on the 18th of May, 1894, and the act was recorded.

That notwithstanding plaintiffs were owners of said lands, J. B. Nalty, who resided in the state of Mississippi, but who was managing or conducting a sawmill business in the parish of Tangipahoa, and one A. H. Hansford, and one W. S. McIntyre of Tangipahoa, personally and by others had entered upon the land in the last year, and during the said time had cut and removed a large quantity of timber therefrom, and said timber so removed was well worth the sum of $10,000. That defendants and their employés were still cutting and removing the timber and depredating on said lands, and refused to stop, though amicably requested so to do. That an injunction was necessary to prevent the complete denuding of the lands of all the timber standing on the same. That some of the logs cut were still lying upon it, not yet having been removed, and some had been removed from the lands, and were at the mill operated and managed by Nalty in the parish of Tangipahoa. That some of the logs so removed had been sawed into lumber, and were then in the yard of said mill, and they feared that Nalty and his employés would remove said logs and lumber out of the jurisdiction of the court during the pending of the suit, and that a writ of sequestration was necessary. That Nalty had some property in St. Helena parish, and some in Tangipahoa, and attachments were necessary; Nalty being a resident of the state of Mississippi. That unless Nalty, Hansford, and McIntyre were enjoined from cutting and removing the lumber from said lands, petitioners would suffer irreparable injury.

This petition was filed on May 31, 1901. On the same day the district court of St. Helena ordered writs of injunction, seques-

tration, and attachment to issue, on petitioners furnishing bond. Bonds were furnished, and the writs issued.

Citations were made upon Nalty, Hansford, and McIntyre; that upon Nalty having been made upon him personally in the parish of Tangipahoa on June 3, 1901.

On the 3d of June the sheriff of St. Helena executed the writ of attachment placed in his hands, by attaching various tracts of land in said parish, and the timber thereon; also two miles, more or less, of railroad track lying in the parish of St. Helena. On the same day he executed the writ of sequestration which had been placed in his hands by sequestering "all the timber that had been cut" on certain lands in the parish of St. Helena, described in his return.

Writs of sequestration and attachment were placed not only in the hands of the sheriff of St. Helena, but also in the hands of the sheriff of Tangipahoa. The sheriff of the latter parish executed the writ of attachment on the 3d of June, by attaching "all the right, title, interest, and claim of J. B. Nalty in and to the railroad line, track, and right of way, of about three miles in length, and a large engine and boiler: also contents of store, consisting of dry goods, groceries," etc.; and the writ of sequestration by sequestering all the right, title, and interest of Nalty in and to certain described lumber and logs. Nalty applied on the 6th of June to the district court for St. Helena to release the attachments and sequestrations which had been made in the two parishes, on giving bond. The application was granted on the same day, conditioned upon his giving bond. The bond was furnished, and on the ——— day of ——— the attachments and sequestrations were released. In his application to release the attachments and sequestrations, he excepted that he had not been cited, and appeared, under reservation of that fact, solely to bond the attachments and sequestrations.

He admitted in this application that he was the owner of the property attached and sequestered, with the exception of the six miles of railroad rails which had been attached, which he declared belonged to the Commercial Bank of Brookhaven, Miss., and were held by him simply as lessee.

On the 23d of September, 1901, Nalty moved the court to dissolve and set aside the

sequestrations and attachments "for causes apparent on the face of the papers," to wit, that the only alleged basis or cause for the attachments made in the case was his alleged nonresidence and absence from the state; that no curator was appointed to represent him, and no appointment of one on his behalf had been prayed for in plaintiffs' petition; that the return of the sheriff of the parish of Tangipahoa on the back of the citation and writs of attachment and sequestration issued to him showed that he (Nalty) was present in the parish of Tangipahoa, and that service was made upon him personally therein, for which reason there was no reason nor ground for an attachment. This application was taken up and overruled.

Nalty on the 25th of September answered. After pleading the general issue, he averred that, being the owner and possessor of the land described in plaintiffs' petition, he had the right to cut and remove the timber therefrom, but, as a matter of fact, only a portion of said timber had been cut, and he denied that as much had been cut as plaintiffs alleged, and alleged that was not worth as much as had been averred; that plaintiffs were not, and never had been, the owners of the land described, and in consequence had no interest in the quantity or value of the timber cut, and, even if they had, that portion of the timber cut was cut and removed more than a year before the institution of their suit, and their action for the value of the same was prescribed; and, if plaintiffs should be held to have or to have ever had any right to or interest in the same (which he denied to be the fact), he pleaded the prescription of one year as a peremptory bar to the suit.

He denied that plaintiffs were or ever had been owners of the property, or any part thereof. He averred: That plaintiffs pretended that the Leathem & Smith Lumber Company Limited, acquired same from E. F. Herwig. That on or about April 30, 1878, in a certain proceeding, entitled, "In the Matter of Ernest F. Herwig, Bankrupt," (No. 1,667, in Bankruptcy), in the district court of the United States for the district of Louisiana, and by virtue of the act of congress passed ——, 1867, said Herwig prayed to be and was by said court adjudged to be a bankrupt, and, as a result of said adjudication and the law, all of the lands described in plaintiffs' petition, being the property of said Herwig, passed in absolute ownership to his assignee in bankruptcy for the benefit of said creditors, subject to the rights of the state and the parish for the taxes due on said property by Herwig, and he had no power to, and could not, transfer to said Leathem any right to said land.

That not only this, but, in addition thereto, the pretended writing, or instrument, writing, or document, which plaintiffs set up as their title from E. F. Herwig, did not describe the lands mentioned therein sufficiently for identification, and same was without force or effect for said reason. That the consideration thereof was not a serious one, and was at the time thereof out of all proportion with the value of the land. That it was not sufficient to serve as a basis for the sale of the land which is the subject of the suit. That Herwig had no authority to sign the name of others to said documents, which it appears were affixed thereto, and no power to sign same himself as administrator, in which capacity it appears that he attempted to sign the same. That said document, instead of being a sale, purported to constitute Leathem as the agent of Herwig. That if intended as a sale, it was an absolute nullity, and without force and effect, for the reasons stated, and, if not, it was an absolute nullity because it was an act under private signature, not in authentic form.

That John Leathem, not having acquired any right or title to the property, could convey none to the plaintiffs. That the so-called title could not be given effect to as a sale, because there was no price, nor as a donation, because it was not in authentic form, and for the further reason that the lands mentioned were so confusedly described that same was meaningless, and it could not be known by reference thereto what lands were covered thereby.

Defendant Nalty then set up his own title. He declared himself to be the owner and actual possessor of all the lands described, under and by virtue of a just title, with full legal warranty, in authentic form, passed April 18, 1899, and recorded May 2, 1899. That he purchased the same from Richard A. Kent and Mrs. Eliza D Kent for the price named in his deed, and received possession

from them. That they, through various mesne and intervening authors and transfers, all recorded in the conveyance books of the parish of St. Helena, acquired all the rights and title of J. Fluker Kent to said land. That the latter was the actual owner and possessor of the land at the time of his death. That he had acquired the same on March 3, 1886, from John Henry Womack, by just title, in authentic form, recorded March 5, 1886, and that Womack acquired said lands at a tax sale made on the first Saturday in March, 1881, for delinquent taxes due the state and parish for the years 1875, 1876, 1877, and 1878, assessed against the said E. F. Herwig, and the tax deed made to Womack was recorded in the conveyance books of the parish of St. Helena on June 1, 1881. That Womack was the owner of said land, and had actual and corporeal possession as owner thereof under said tax deed. That more than three years elapsed after the adoption of the constitution of Louisiana, in 1898, and before the institution of the present suit, and the tax sale which was made of said lands to Womack could not now be set aside for any cause; and defendant pleaded in aid of his title and possession of prescription of three years provided by article 233 of the constitution; that his title was good and valid, and same should be maintained, and he should be quieted in his ownership and possession. He also pleaded the prescription of three years provided for in section 5 of Act No. 105 of 1874, and in aid of his title and possession the prescription of 5 and 10 years. Assuming the attitude of plaintiff in reconvention, he, for reasons assigned, prayed judgment against the plaintiffs for $2,200 as damages for the wrongful issuing of the writs of injunction, attachment and sequestration.

The district court rendered judgment decreeing to plaintiffs the ownership of the lands claimed. It perpetuated the injunction which had been issued, and enjoined Nalty perpetually from cutting or removing any timber from the land decreed to belong to the plaintiffs.

It decreed that plaintiffs' sequestration issued in the suit be sustained, and the logs and lumber sequestered belonged to the plaintiffs, and, on defendant's failure to return

them within 10 days after final judgment, plaintiffs recover of him the sum of $160.

It further decreed that plaintiffs recover of the defendant Nalty the sum of $3,483.12, for the value of timber cut and removed from plaintiffs' land, and not sequestered in the suit; that plaintiffs' attachment be perpetuated and maintained, and that the property attached be sold to satisfy plaintiffs' judgment; and that from the proceeds plaintiffs be paid by preference and privilege of attaching creditors. It dismissed the demands of plaintiffs as against Hansford and McIntyre at plaintiffs' costs, and decreed that Nalty pay all other costs.

The defendant Nalty appealed.

### Opinion.

The defendant defends—First, upon the ground that he has a just and valid title to the lands of which the plaintiffs seek to be decreed the owners; but, second, upon the ground that, having been in actual possession of the property as owner for more than a year, he has the right to be retained in that possession, unless plaintiffs can themselves produce a good and legal title; that, if he recovers, it must be on the strength of his own title, not upon the weakness of the defendant's. There can be no question, under the evidence, that Nalty has been in actual possession in good faith as owner of the property claimed for over a year before the institution of the present suit.

The title under which he took possession was an act of sale to him of the property from Richard A. Kent and Mrs. E. D. Kent, by notarial act of date of April 18, 1899, which was duly recorded. Tracing this title back through the various conveyances introduced in evidence in support of the title of the vendors of the defendant, we find it, by the record, to rest upon an act of sale from H. K. Strickland, sheriff and tax collector of St. Helena parish, to J. H. Womack, executed on the 27th of May, 1881. This act recites: That the tax collector, acting under Act No. 107 of 1880, had advertised for sale on the first Saturday in March, 1881, "the following described property, assessed in the name of E. F. Herwig. to wit, six hundred and seventy-nine acres of land bounded N. by Williams, E. by Strickland,

S. by Est. of Andrews, and west by Watson, for the delinquent state taxes for the years 1878, 1877, 1876, and 1875, and delinquent parish taxes for the years 1878, 1876, and 1875, due thereon, amounting, in principal, penalty, and costs, to seventy-nine $^{89}/_{100}$ dollars; said land having been forfeited and adjudicated to the state of Louisiana for said delinquent taxes." That after advertising the said land he had offered the same for sale on the first Saturday in March, 1881, and, the property failing to bring the taxes and penalties and costs, he had reoffered it for sale on the 2d of April, 1881, without limit, pursuant to section 3, Act No. 107, Acts 1880, after advertisement. That at said second offering J. H. Womack, being the last and highest bidder, became the purchaser for the price of 50 cents, and, he having complied with his bid, he (the tax collector) did in and by said act transfer to the said Womack all the rights and interests of the said E. F. Herwig and of the state of Louisiana in and to the above-described land, and all improvements thereon. This act was recorded in St. Helena on June 1, 1881.

On the 3d of March, 1886, by act before Addison, notary public, John A. Womack sold, without guaranty or warranty, to James Fluker Kent, 960.26 acres, described as situated in the parish of St. Helena, bounded on the north by the lands of J. A. Williams, east by those of Strickland, south by former estate of Andrews, and west by those of W. W. Watson, and declared to be 'the same lands acquired by the vendor at tax sale in St. Helena parish on the 2d day of April, 1881; subrogating the purchaser to all his rights and actions of warranty. The lands conveyed are described in this act in detail by United States government subdivisions, and a comparison of the descriptions thereof with those given in the patents of the United States government issued to Arthemise Michel, Louise Herwig, and E. F. Herwig in 1859 and 1860·will show them to be the same. It will be seen, however, that whereas 679 acres only were declared by the tax collector, Strickland, to have been transferred to Womack as adjudicatee at the tax sale made by him, Womack transferred 960 acres to Fluker Kent, as having been purchased by him at that sale. This sale was recorded in St. Helena parish. The same title which

was conveyed by Womack to Fluker Kent passed by subsequent successive acts of sale which were recorded in St. Helena parish from Fluker Kent down to Mrs. E. D. Kent and R. A. Kent, the vendors of the defendant Nalty. This is defendant's title. There was no attempt made to show that the lands which the tax collector, Strickland, declared to have been assessed in the name of E. F. Herwig, and which he adjudicated to J. H. Womack, had ever been in fact forfeited to or adjudicated to the state of Louisiana for delinquent taxes. The title on which the plaintiffs declare rests on the purchases made by Mrs. Arthemise Michel, Mrs. Louise E. Herwig, and E. F. Herwig from the United States government, for which they each received patents in 1859 and 1860, followed by the following instrument:

"New Orleans, June, 8, 1888. We, have lands in St. Helena, Louisiana, which I have this day sold to Mr. John Leathem, the following described property: Widow Arthemise Michel, about 320 acres; Mrs. E. F. Herwig (L. E.), to 320 acres; E. F. Herwig, to 320 acres. The same day U. S. entry 1,859, in our names, for the consideration for the sum of one hundred and seventy-five dollars cash, without guaranty of title, as our interest may appear, with full power of attorney to institute legal proceedings to recover said property, without recourse on us.

  "[Signed]    E. F. Herwig.
"Witnesses:    Mrs. L. E. Herwig.
  "B. B. Pegram.    Mrs. E. F. Herwig.
  "H. Burke.    E. F. Herwig,
                    "Administrator.
          "Mrs. Widow A. Michel.

"State of Louisiana, Parish of Tangipahoa. This day before me, the undersigned, a duly qualified notary public in and for said parish and state, came and appeared Ernest F. Herwig, of this parish, and to me well known as the party who executed and signed the within and foregoing instrument, who acknowledged that he executed the same for the purpose and object therein named (i. e., to sell to John Leathem certain lands lying in St. Helena parish, and more particularly described as [here follow certain lands in St. Helena parish, described by United States government subdivisions]. * * * And he does hereby sell to said Leathem said lands without warranty or guaranty, but with full

power to institute legal proceedings to recover same without recourse on him (appearer).

"This August 9th, 1888.

"I believe the above description to be correct.

"Witnesses: John W. Addison,
"H. Burke. Not. Public.
"J. A. Addison."

A comparison of the descriptions given in this instrument with those of the patents issued by the United States government to Mrs. Arthemise Michel, Mrs. Louise E. Michel, and E. F. Herwig show them to be identical.

This act was recorded in St. Helena on February 25, 1889.

On the 18th of May, 1894, John Leathem and Helen L., his wife, and Thomas H. Smith and Anna A., his wife, as parties of the first part, sold and quitclaimed these same properties to the Leathem & Smith Lumber Company, the plaintiffs, as the party of the second part.

The consideration of the conveyance and transfer was declared by the parties of the first part to be the sum of $1, and other good and valuable considerations to them in hand paid by the party of the second part.

This act was recorded in St. Helena parish on September 20, 1901.

The present suit followed.

The evidence shows: That E. F. Herwig was married to Louise E. Michel in 1856. That her mother, Mrs. Arthemise Michel, died in 1885, leaving the daughter as her sole heir. That the daughter, Mrs. Louise E. Michel, wife of E. F. Herwig, died on July 30, 1888, leaving her husband, by her will, as her sole heir. That Ernest F. Herwig, his wife, Louise E. Herwig, and his mother-in-law, Mrs. Arthemise Michel, had each in 1858 and 1859 purchased lands from the United States government, for which they received patents in 1859 and 1860. That the lands covered by the patents correspond as to descriptions with those described in plaintiffs' petition, and described in the act of sale from E. F. Herwig to John Leathem; Mrs. Arthemise Michel having purchased 320.65 acres, Mrs. L. E. Herwig 317.89 acres, and E. F. Herwig 321.82 acres. That E. F. Herwig, by his purchase, and by inheritance from his wife, who had herself inherited from her mother, became the owner of all of these lands at the death of his wife, and was the

owner of the same on August 9, 1888, at which date he appeared before Addison, notary public, and confirmed and made de novo a sale of these lands to John Leathem, unless his title thereto had before this become devested in some manner.

Defendant maintains that he was devested of the same by reason of having been adjudged a bankrupt by the district court of the United States; he contends that by said fact E. F. Herwig parted with the ownership of all the property he had, whether placed on his schedule or not, and he could not regain the ownership of the same except by a new title, which title he never had obtained; that therefore he had no title to convey, and conveyed none to John Leathem, and he could convey and conveyed none to the plaintiffs. In support of this position the court is referred by counsel to Chachere v. Block, 46 La. Ann. 1386, 16 South. 176, and May v. Railroad Co., 44 La. Ann. 444, 10 South. 769.

Plaintiffs, on the other hand, insist that under the bankrupt act of 1867 the title to the property of a bankrupt remained in the bankrupt, and did not vest in the assignee, until the latter had qualified, and the judge or register had assigned or conveyed the same to him by an instrument under his hand; that, until such instrument should be executed and recorded, the title remained in the bankrupt. Plaintiffs rely upon section 14 of the bankrupt law of 1867; Bump, Bankr. (8th Ed.) notes; Rev. St. U. S. § 5044; Hampton v. Rouse, 22 Wall. 275, 22 L. Ed. 755; Conner v. Long, 104 U. S. 230, 26 L. Ed. 723; Brandenburg, Bankr. p. 723m; Greene v. Taylor, 132 U. S. 415, 10 Sup. Ct. 138, 33 L. Ed. 411.

We think plaintiffs' position on this subject is correct, and that title did not pass out of Herwig, as there was no special assignment or conveyance, as the bankruptcy law required to bring about such a result.

The facts shown in the Block Case, 46 La. Ann. 1386, 16 South. 176, and the May Case, 44 La. Ann. 444, 10 South. 769, must have been different. The special assignment called for must have been made. Decisions of the United States courts guide us in this matter.

Herwig was discharged from all his debts by his creditors, and the property was not disposed of in the bankruptcy proceedings in any way. Under our state insolvency pro-

ceedings, Herwig could have legally conveyed title to John Leathem. Remy v. Municipality No. 2, 11 La. Ann. 158; Walling's Heirs v. Morefield, 33 La. Ann. 1176.

Defendant raises a great many objections to plaintiffs' title, in which they have no legal interest, which concern purely other parties, and which are personal to them. These objections are of the kind referred to and disposed of in the case of Viguerie v. Hall (La.) 31 South. 1019.[1] The defendant, for instance, is in no manner interested in the question as to whether the price given by Leathem to Herwig for the property was large or small, for he is neither a creditor nor an heir of the latter. If Herwig was satisfied with the price, defendant can certainly not complain.

He asserts that the instrument by which plaintiffs claim the title to this property passed from Herwig to John Leathem was not an act of sale, but a mere act of agency. Both the original and the supplemental act executed by Herwig confer upon Leathem "the right to institute legal proceedings to recover the property without recourse on him." We do not know what the object or motive was in placing this particular clause in the acts. Whatever it may have been, it did not have the effect of changing the acts from acts of sale into mere acts of mandate. A moneyed consideration is declared to have passed from Leathem to Herwig for the transfer, and this is inconsistent with a simple act of agency. A comparison of the date of the first act (June 9, 1888) with that of the second (August 9, 1888) will show that in this interval Herwig's wife had died (July 30, 1888), leaving him sole heir, of all her property including therein the property she had inherited from her mother; that at the latter date, if not before, he was the owner of all the property, unless this result was cut off by some intermediate act. These acts show, we think, as the defendant claims, knowledge on the part of both Herwig and Leathem that legal proceedings of some kind might be necessary to make Leathem's ownership effective, but they contain no admission that the property was in the actual possession of a third person, and in fact it

was not. It is possible that, Herwig knowing that the succession of Mrs. Arthemise Michel, of whom his wife was the sole heir, was still under administration, the parties desired to place Leathem's right to sue as a party plaintiff beyond a question as to all interests (should suit become necessary) which might be involved. The same considerations may have caused, after the death of Mrs. Herwig, the insertion of the same clause in the second act.

We now turn to defendant's title. He is mistaken in supposing that he appears before the court as holding under a tax title. He traces back to a direct title from the state to John A. Womack, resulting from the latter having become the adjudicatee at public auction of property of which the state itself was asserting ownership at the time. The state was not acting in the matter of that sale as a "creditor" proceeding against Herwig's property in enforcement of his taxes, but as a "proprietor" (Improvement Co. v. Wade, 51 La. Ann. 251, 25 South. 105) disposing of its own. It is declared in the deed of sale to Womack that title had vested in the state under a forfeiture and adjudication to it of this property for the delinquent taxes of 1875, 1876, 1877, and 1878, assessed in the name of E. F. Herwig, but there is nothing to show that any such forfeiture was ever made. The state did not claim to hold an original title from the United States, but acknowledged and claimed to hold a derivative title, which it had acquired from Herwig. It was incumbent, therefore, to establish affirmatively that it had, in point of fact, acquired Herwig's title. This was not done. Defendant did not attempt to trace back of the sale to Womack. Unless the state itself had title at that time, it could scarcely convey one to Womack. Defendant alleges that the whole of the property claimed in plaintiffs' petition belonged absolutely to Herwig at the time he went into bankruptcy, in April, 1878. It is recited in Womack's deed that the land was forfeited for the taxes of 1878 and preceding years. If it was forfeited at that late date, there should have been and must have been some record of the fact. There being before the court no title advanced in the case, other than a conventional sale at public auction from the state, as owner, to Womack, no question is presented for

---

[1] 107 La. 767.

adjudication as to whether the prescription of three years prescribed in article 233 of the constitution could have been invoked by the defendant in aid of his title, had it rested on a tax sale. No actual possession of the property involved in this litigation seems to have been taken by Nalty's authors. We see no basis for the prescription of three, five, or ten years set up by the defendant. We think it may not be amiss for us to say that, had the sale at which Womack became the adjudicatee been in truth a tax sale made in enforcement of taxes enforced upon the property under an assessment in the name of E. F. Herwig, the sale would have conveyed no title. Not only was the description of the property entirely insufficient, but the boundaries given were entirely wrong. The tax collector, besides, only sold 640 acres of land to Womack. We think, under the evidence adduced, the judgment of the district court, decreeing plaintiffs to be the owners of the property claimed, is correct, but that it is erroneous in some respects. Plaintiffs never attempted to exercise rights of ownership over this property prior to the introduction of the present suit. On the contrary, they and John Leathem slept upon their rights, and permitted the defendant Nalty, without opposition, to exercise, himself, at very considerable expense and doubtless in good faith, rights of ownership upon it, under a title translative of property evidenced by recorded authentic act.

The defendant was not a trespasser when he went upon the property, laid a track upon it, and cut down timber, and (prior to this suit) removed the timber from it so cut down. In so doing he was acting as owner, under what he supposed to be a just title, upon the institution of the present suit; and he is now protected by that title, and good faith in acting under it, from a claim for the value of the lumber cut and sold antecedent to this suit.

The possession and good faith necessary for the prescription of 10 years acquirendi causa differs from the possession and good faith requisite to ensure protection against claims for damages, or for the value of lumber cut down and disposed of prior to demand advanced, under the circumstances disclosed in this case. Dalloz v. Verge, under article 550, Code Nap. (No. 1). There is no necessity for continuity of possession for the latter purpose, or for possession to have been taken of the entire property.

We think the plaintiffs were entitled to the ownership of the lumber which had been cut down on the property, but which was still existing in kind at the time of the bringing of the suit, and that they were entitled to sequester the same. We think there was no legal basis for the judgment in favor of the plaintiffs against the defendant for the sum of $3,480.12 for the value of the timber cut and removed from plaintiffs' land and not sequestered, and the attachment securing payment of the same should be annulled and set aside. There was no right to attach the railroad rails which were attached in the case. They did not belong to defendant, but were held by him as lessee. We do not think defendant, on his reconventional demand, entitled to ask more than $100 as counsel fees for setting aside the attachment. The damages he complains of would have resulted from the injunction which issued, and the sequestration which was taken out, even had no attachment been issued. The defendant being a resident of another state, plaintiffs had the right to bring him into court by process of attachment.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from, in so far as it decrees that the plaintiffs do have judgment against and recover from the defendant J. B. Nalty the sum of $3,480.12 for the value of the timber cut and removed from the plaintiffs' lands, and not sequestered, in this proceeding, and that the property attached herein be sold to pay and satisfy the same by preference and privilege of attaching creditors, be, and the same is hereby, set aside, annulled, avoided, and reversed. It is further ordered, adjudged, and decreed that, except as so set aside, annulled, avoided, and reversed, the judgment appealed from in favor of the plaintiffs be affirmed, but with costs upon them of appeal.

It is further ordered and adjudged that the defendant J. B. Nalty do have judgment against the plaintiffs upon his reconventional demand for the sum of $100 for counsel fees in setting aside the writ of attachment. The right of the defendant to demand reimbursement for taxes paid is reserved.