Nos. 729 and 816

First Circuit

---

T. AUCOIN & SONS v. NAPOLEON YOUNG

(TRICHE, Intervener)

---

(January 26, 1931. Opinion and Decree.)
(March 3, 1931. Rehearing Granted.)
(June 16, 1931. Opinion and Decree on Rehearing.)
(July 17, 1931. Writ of Certiorari and Review Granted by Supreme Court.)
(November 3, 1931. Judgment of the District Court and Judgment of the Court of Appeal on Rehearing Avoided and Set Aside and Case Remanded for Further Trial.)

---

ELLIOTT, J., dissenting.

Pecot & Bauer, of Franklin, attorneys for plaintiff, appellant.

Borah, Himel & Borah, of Franklin, and W. T. Gilmore, of Morgan City, attorneys for defendant, appellee.

MOUTON, J. Plaintiff alleges in its petition that on August 20, 1929, it acquired by authentic act of sale recorded August 21, 1929, in the book of conveyances of the parish of St. Mary, a lot of ground from Aureluis Montet, who, it is averred, acquired title thereto by act of donation in 1904, from his mother, Mrs. Gauthreaux, also, duly recorded; that Paul Triche, a resident of St. Mary, is in actual possession of the property without any title whatsoever thereto on whom plaintiff immediately after its acquisition served notice to vacate the premises, but which he refuses to do.

Other allegations are made, but are left out of this opinion, not being pertinent to the issue presented for decision.

In his answer to plaintiff's petition, Triche disclosed the fact that he held possession as tenant of Napoleon Young, who claimed to be owner, and who was substituted as defendant in the place of Triche, the latter intervening in the case on a claim for improvements he had made on the property.

Upon a motion for a writ subpœna duces tecum filed by defendant, Napoleon Young, the following escrow agreement between plaintiff and Aureluis Montet, its alleged vendor, was produced, to-wit:

"Know all men by these presents: That T. Aucoin and sons, a commercial partnership composed of Joseph S. Aucoin and Albert N. Aucoin, residents of the parish of St. Mary, Louisiana, and herein acting through and represented by Albert Au-coin; and Aureluis Montet also a resident of the Parish of St. Mary. .

"That T. Aucoin and Sons having this day by act of sale before L. O. Pecot, Notary Public, for the Parish of St. Mary, acquired a certain lot situated on the Public Road along the West bank of Bayou Boeuf and which said lot was acquired by Aureluis Montet in an act of donation from his mother, Mrs. M. A. Gauthreaux, and whereas the vendor has to deliver possession of the above described property to the vendee herein.

"It is agreed that until the said T. Aucoin and Sons obtain possession of said property from the present occupant, Paul Triche, whether the same be obtained by amicable delivery or by judicial proceedings, that the purchase price of $75.00 paid by the said Aucoin and Sons should remain in escrow in the hands of the People's State and Savings Bank of Morgan City, Louisiana; the purchase price to remain in escrow until the bank should have been informed in writing by L. O. Pecot to deliver said check to the said Aureluis Montet or his heirs."

Upon the production of the foregoing document, Young and Triche filed an exception of no right and no cause of action, which was sustained below, and the suit was dismissed.

Plaintiff appeals.

In substance, the contention of defendants is that, under the stipulations of the contract, above reproduced, there was not a translation of the ownership of the property from Montet to plaintiff, who has therefore no legal title thereto, and consequently cannot bring this, a petitory action.

Judging from the citations of counsel for defendants, we understand their defense to be that the escrow agreement showed that there was not a sale, but a mere promise of sale, and hence there has been no transmission of title from Montet to plaintiff.

This contention, we understand, is based on the stipulation in the escrow agreement that the purchase price of $75 should remain in escrow in the hands of the Bank of Morgan City until plaintiff obtained possession of the property from Paul Triche, then the occupant; the position of defendants being that, until the price was paid, there could be no transfer of ownership to plaintiff, and hence no divestiture from Montet in whom the title remained.

Counsel for defendants cite Peck v. Bemiss, 10 La. Ann. 160, as the leading case on that proposition. In that case the land was sold "at ten dollars per acre; one-third of which is to be paid cash, when possession is given, and the balance in one and two years," etc. The court in commenting on that contract, said that Overton, who appeared as vendor through Sims, an agent, had "engaged himself to sell the land to Peck at a future time, and Peck engaged himself to purchase it when possession should be given, on the terms of cash and credit designated in the instrument." The court said that, until there was a voluntary execution of the agreement by Overton, or a forced execution "of the promise, the ownership did not pass to Peck."

The court then enters into a discussion of the legal effects of a promise of sale, and quotes Marcade on this question where he justly remarks, says the decision, that:

"La promesse de vendre vaut vente, c'est a dire, oblige a passer le contrat."

In the Peck case, above cited, it will be noted that Peck bound himself to pay the one-third cash of the price "when possession is given." Possession, before payment of the cash, was made an essential stipulation of the contract.

In the escrow agreement above referred to it will be observed that it says that plaintiff, by a notarial act of sale passed the same day, had acquired the lot in contest. The agreement also says that the purchase price of $75 paid by plaintiff, Aucoin & Sons, should remain in escrow with the bank until notification by Pecot to deliver the check to Montet.

The escrow agreement, it will be seen, says until Aucoin & Sons, plaintiff, obtained possession from Triche, occupant of the premises, the purchase price should remain in escrow in the bank. There is no stipulation, however, that the check of $75, the purchase price for the lot as fixed in the escrow agreement, should be paid when "possession is given," which is the distinctive feature in the case of Peck v. Bemiss, supra, which evidently gave it the character of a promise of sale.

Counsel for defendants refer to other decisions in line with the Peck case, and which we find unnecessary to discuss in passing on this issue.

Let us suppose in the instant case that Triche had removed from the premises, and that Montet, claiming to have delivered possession, brought suit against plaintiff if the latter refused to pay the price. The demand of Montet could not be for anything else than for a dissolution of the sale or for the purchase price. Evidently, if brought on the resolutory condition for a rescission, the contract would be stamped as a sale. On the other hand, if he sued for the purchase price and recovery was obtained on that demand, it is manifest that no decree would be needed requiring the execution of a sale to plaintiff to transfer ownership and possession, for the obvious reason that there had been a sale, and duly recorded, which being by

public act for an immovable, carries tradition or aelivery. Civ. Code, art. 2479.

Counsel, in support of the contention that plaintiff did not acquire title, refer to Capital Building & Loan Association v. Northern Insurance Co., 166 La. 179, 116 So. 843; and to Lapene v. Badeaux, 36 La. Ann. 194.

The case in the 166 La. refers to judicial sales, where it has . been uniformly held that the adjudicatee must comply with the terms of the adjudication or else he is considered as never having been the owner. The same ruling is found in Lapene v. Badeaux, 36 La. Ann. 194.

These decisions hold that, where there is a refusal or a failure to pay the purchase price by the adjudicatee, he does not become the owner by the adjudication.

Conceding that the same rule applies in private sales, the escrow agreement in question does not show or indicate in the slightest degree that there was either a refusal or failure to pay the price by Aucoin & Sons, plaintiff and purchaser. On the contrary, it appears from the terms of the agreement that a check was deposited in the bank for the price which was to be delivered to Montet on the written order of Pecot.

The defendants are undertaking to champion the supposed rights of Montet in urging the defense that he has not received the price for his lot of ground, while it appears from the allegations of plaintiff's petition, which must be accepted as true under the exception, that Montet has made an authentic sale of his property which is now on file in the public records of the parish of St. Mary.

In West v. Negrotto, 52 La. Ann. 381, 27 So. 75, the court held that defendant in a petitory action can set up an outstanding title in a third person, but such title must be a valid, legal, subsisting title, better than that of the plaintiff.

Under plaintiff's averment that he acquired the lot by an act of sale duly registered on the public records of the parish of St. Mary, and that the price had been paid and was deposited in escrow, all of which must be taken as true under the exception, it would scarely be logical to hold that Montet has an outstanding title legal, valid, and better than that of the plaintiff. In such a situation it must be held that the respective rights to that title which defendants are seeking to challenge is a matter which concerns plaintiff and Montet, and which cannot be taken advantage of by defendants in a petitory action. Leathem & Smith Lumber Co. v. Nalty, 109 La. 325, 33 So. 354.

Counsel for defendants may contend that the decisions above cited apply to contests by defendants in a petitory action in reference to relative nullities, but that their defense is that the pretended sale, as shown by the escrow agreement, was absolutely without effect as to transmission of ownership to plaintiff; that this involves an absolute and not a relative nullity. For the reasons hereinabove given, we find that there was a sale, and not a mere promise of sale, under the alleged sale and escrow agreement which evinces a translation of ownership, and that therefore there is no merit in the contention of defendants to support their exception under their plea that the nullity referred to is absolute. Our ruling applies whether the defense be grounded on relative or absolute nullities.

Counsel for defendants refer to the case

of Dover v. Atlas Assurance Co. of London, England, S. R. vol. 130, No. 10, Dec. 18, 1930, p. 828. In that case a deed between Dover, plaintiff, and McDaniel was placed in the Sabine State Bank at Many, La., with a letter attached to the deed, as follows:

"Herewith annexed is deed from J. Dover to J. L. McDaniel, which is deposited with you to be delivered to said J. L. McDaniel, upon payment by him, of the sum of $12,000.00, which amount is to be placed to the credit of J. Dover, Florien, Louisiana.

"Signed, J. Dover

"J. L. McDaniel."

In that case McDaniel failed to pay the $12,000, and the court held, under the facts, as therein presented, that there had been no sale or transfer of ownership.

In commenting on the evidence, the court said:

"We have the uncontradicted testimony of both the vendor and vendee that delivery of the deed should be concurrent with the payment of $12,000.00, and the further evidence of the written letter to that effect attached to the deed."

Further the court says:

"And the failure to pay the price and receive the delivery of the deed fails to change the ownership of the property."

This is not the situation here, where it clearly appears by the escrow agreement that the price was paid by check placed in the bank where it was to remain in escrow subject to the written order of L. O. Pecot, and where it is shown also that Montet had, by authentic act of sale duly recorded, transferred ownership of the property to plaintiff.

In order to get at the meaning of the parties so as to make a correct application of the principle of law which should govern this case, it is proper to refer to the wording of the escrow agreement where it says that: "It is agreed that until the said T. Aucoin and Sons obtain possession of said property from the present occupant, Paul Triche," whether obtained amicably or by judicial proceedings, the purchase price of $75 paid by the said Aucoin & Sons shall remain in escrow in the hands of the bank. This stipulation in the escrow agreement shows that plaintiff had taken upon itself to obtain actual possession from Triche, amicably or judicially. The suit by plaintiff herein shows that it undertook to obtain that possession by judicial process from Triche which by the allegations of the demand plaintiff considered a mere occupant or trespasser.

The vendor of the plaintiff, Aureluis Montet, had certainly done as much as was in his power to transfer his possession to the lot by the authentic act of sale which he had permitted to be spread on the public records, and also his ownership therein by that deed. It was not possible for him to do more for the transmission of title thereto.

The contract, as appears by the escrow agreement, imposed on plaintiff the duty of obtaining the actual occupancy of the premises from Triche. This part of the agreement created reciprocal rights and obligations between Montet and plaintiff, in case plaintiff failed by negligence or from some other unjustifiable cause to obtain that possession, amicably or by judicial process, if it could not be otherwise arranged. On the other hand, if possession was obtained by one method or the other, as directed in the contract, and plaintiff refused to order the delivery of the check by the bank, in either contin-

gency above pointed out, plaintiff and Montet would be the only parties concerned. Such issues cannot be taken advantage of by defendants in a petitory action under the authorities above cited to which the issues of the case logically revert. The contract between Montet and plaintiff was a sale, and was not a promise of sale or other contract, as above stated.

For the foregoing reasons, we hold that the exception of no cause and right of action was improperly maintained.

It is therefore ordered, adjudged, and decreed that the judgment be avoided and reversed, that the exception be overruled, and the case be remanded for trial on the merits, and be proceeded with according to law; appellee to pay the cost of appeal, those of the lower court to await the final decision of the case.

### ON REHEARING

LeBLANC, J. Our further consideration of the question raised under the exception of no cause of action, in this case, leads us to the conclusion that our former judgment was erroneous. The judgment of the lower court which sustained the exception was correct and should have been affirmed.

The only issue is that involved in the effect that is to be given to the escrow agreement entered into contemporaneously with the act of sale from Aurelius Montet to the plaintiffs herein, T. Aucoin & Sons. That agreement is quoted in full in the original opinion (132 So. 133) which we rendered. Granting that it is properly before the court, and that the question of its admissibility in evidence is no longer an issue, we are now of the opinion that the case was properly disposed of by the lower court on the exception of no cause of action.

Counsel for the plaintiffs contend that we have before us all the essentials of a valid contract of sale, which proposition is not questioned. There is no doubt a binding agreement between these plaintiffs and Aurelius Montet which can be made the subject of specific performance. With the escrow agreement before us, however, which shows on its face that the purchase price agreed on has not passed as yet to the vendor, but is held in a bank subject to further instructions from the notary before whom the purported act of sale had been passed, we are constrained to hold that the ownership of the land has not passed to these plaintiffs and they can exercise no dominion over it. If they have not the capacity of owners and have no dominion over the property, then they are without right to maintain a petitory suit against this defendant, who apparently holds under a deed which on its face is translative of property. The decision in the case of Peck v. Bemiss, 10 La. Ann. 160, is controlling on this point and supports the ruling of the lower court on the exception. It is true that in this case there was an authentic act of sale executed by the parties, but that deed has to be construed in connection with the escrow agreement entered into simultaneously with it, and when that is done, there results the same form of agreement as is found in the case of Peck v. Bemiss, supra, which the Supreme Court held constituted merely a promise of sale under which the ownership of the property did not pass. The wording of the escrow agreement in this case and that of the agreement between the parties in Peck v. Bemiss may be different, but in substance their meaning is the same. The effect of both is to show that the purchase price agreed upon has not been paid, and will not pass to the vendor until there is an assurance that he can

transfer possession. Under a condition such as this, there results only an agreement to sell which can be enforced, but no sale in which title, possession, and control and dominion over the property passes. The principle that no complete title under which the purchaser may be said to be the owner of the property passes until he has paid the purchase price seems to be well imbedded in our jurisprudence. It is derived from article 2487 of the Civil Code which reads as follows:

"The seller is not bound to make a delivery of the thing, if the buyer does not pay the price and the seller has not granted him any term for the payment."

We find an interesting history of the development of the principle stated under the articles of our Code in the case of Lapene v. Badeaux, 36 La. Ann. 194, wherein we are told that it comes to us from the Code Napoleon, being embodied in article 1612 of that Code. A similar provision exists in the Spanish law, "which like the French, once prevailed here." As stated further, the principle is found in Patrida III, tit. XXVIII, law 46, where it is expressed in these words:

"The property in the thing sold will not pass to the buyer until he has paid the price thereof."

The theory has its origin in the Roman law, and, as "finally consecrated by our law has been applied by the courts. Washburn v. Green, 13 La. Ann. 332; Doll's Heirs v. Kathman, 23 La. Ann. 486; Mazoue v. Caze, 18 La. Ann. 31; Losee v. Sauton, 24 La. Ann. 370; Haynes v. Breaux, 16 La. Ann. 142; Hills v. Jacobs, 7 Rob. 406; Osterberg v. Union Trust Co., 93 U. S. 424, 23 La. Ed. 964." To these may be added Wells v. Blackman, 121 La. 394, 46 So. 437; Kessler & Co. v. Manhein, 114 La. 619, 38 So. 473; and Centreville Bank v. Boudreaux et al., 133 La. 75, 62 So. 412.

Counsel for plaintiffs questions the right of the defendant in this case to challenge the validity of the act of sale between the parties to it, claiming that he is without interest to do so. But the plaintiffs themselves, and their vendor, in the agreement of escrow, recognize the fact that Paul Triche is in possession of the property, and he is so alleged to be in the original petition filed by the plaintiffs. Then, on a showing made by Triche that his possession is as agent for his father-in-law, Napoleon Young, and that Young is the real party defendant, the plaintiffs voluntarily come into court and ask that the latter be substituted as defendant in place of Triche whom they had at first cited. Moreover Young's answer sets up title to the property which he alleges is derived from the same author under whom plaintiffs claim. We are of the opinion, therefore, that he has shown much interest and is in a position, at least as possessor of the property, to challenge the rights of the plaintiffs under their alleged sale from Aurelius Montet. It is elementary, besides, that in an action of this kind, the plaintiff has to rely on the strength of his own title and not on the weakness of his adversary's.

All of the foregoing considerations convince us, as already stated, that we were in error in our former opinion and that the judgment and decree rendered should be set aside and annulled.

It is therefore now ordered that the judgment and decree herein handed down on January 26, 1931, be and the same are hereby set aside and annulled, and it is further ordered that the judgment of the lower court, sustaining the exception of no cause of action, and dismissing the plaintiffs' suit, be now affirmed.

ELLIOTT, J. (dissenting). Triche, the first defendant, filed an exception of no right or cause of action, which was overruled. This ruling is not questioned.

Triche then filed an answer putting at issue plaintiff's alleged title, alleging among other defenses that plaintiff had not paid the price of the land to Montet.

Triche, tenant of Young, retired from the defense and Young took his place as defendant.

Mr. Young filed an answer admitting that plaintiffs had bought the property from Montet, but denies that their title is good, because of non-payment of the purchase price to Montet; admits that Montet had title from Mrs. Gauthreaux, but urges that Montet's title is in the form of a donation inter vivos; that defendant's title is superior to plaintiffs', for the reason that Mrs. Gauthreaux, the common author, after donating the property to Montet, sold the same property to Ross, defendant's author, and her title to Ross was recorded in the conveyance book before the donation from her to Montet was recorded in the book of donations.

The averments in the petition of the plaintiffs and in the answer of Young forms the issue between the parties, the new matters alleged in the answer of the defendant being regarded as denied by the plaintiff. Code Prac. art. 329.

Before the case was fixed for trial, the defendant, under subpoena duces tecum, obtained from plaintiffs an escrow agreement which had been entered into between them and Montet. This escrow purports to support defendant's averment that the purchase price stipulated in the act from Montet to Aucoin & Sons, the plaintiffs, had not been paid, and if plaintiffs should lose the suit the price would not be paid.

Upon the production of this escrow agreement Young filed an exception of no right or cause of action based on the agreement.

The lower court sustained the exception and dismissed the suit.

This is the judgment before us for review.

Plaintiffs merely produced the agreement; the result of the production is a matter for the merits.

Defendant's so-called exception of no right or cause of action is not in fact, such, but is rather a supplemental answer, because it brings into the case as a defense that Montet remains the owner and that plaintiffs are not the owners of the land claimed in their petition and of which defendant is in possession. The exception states that, "the petition taken and considered in connection with the escrow agreement * * * discloses no right or cause of action."

The escrow agreement does not take from the right or cause of action alleged in the petition, but constitutes a fact which is a matter for the merits. It does not question plaintiff's right to stand in judgment on the question of ownership; it questions his ownership.

The present situation is like that which existed in McCall v. Irion, 40 La. Ann. 690, 4 So. 859. The following is from the syllabus:

"In a petitory action, exceptions, filed by a defendant, the allegations of which, to be sustained, require the introduction of evidence of title upon which the exceptor must rely to maintain himself in the possession and ownership of the property, should be referred to the merits."

In the opinion it is stated that as plaintiff could not introduce evidence in sup-

port of their title, none could be offered by defendant. That an exception of the kind should be referred to and considered with the merits.

In Robbins v. Martin, 43 La. Ann. 488, 9 So. 108, the court said:

"What is termed a plea of no cause of action, ceases to be such, and degenerates into an answer, if it presents an essential averment of fact not stated, or admitted in the petition."

In Commercial National Bank v. Sanders, 132 La. 174, 61 So. 155, the court said (quotation from the syllabus):

"The exception of no right of action which goes to the merits of the cause, and is not aimed at the right of plaintiff to stand in judgment, should be overruled, and defendant ordered to answer." Citing authorities.

The case of Peck v. Bemiss, 10 La. Ann. 160, is not applicable to the present situation. That was a petitory action and based on a promise to sell and as to which the case was tried on the merits and the promise held not sufficient to support the action.

In this case plaintiff is not suing on a promise to sell, but an absolute unqualified title on its face. This escrow agreement is a matter which concerns Montet and T. Aucoin & Sons personally.

The defendant Young is not biased nor prejudiced by it in his defense. He can urge any defense against T. Aucoin & Sons that he could urge against Montet. The fact that as between Montet and plaintiff the price was not paid does not concern Young. Civil Code, art. 2456.

In Viguerie v. Hall, 107 La. 767, 31 So. 1019, 1021, the court decided the very question involved in the present case. It was a petitory action in which an exception of no cause of action was urged on a similar ground. The court said:

"Defendants' first contention is that the action brought by the plaintiff is a petitory action; that such an action can only be brought by one having title to the property he seeks to revendicate; that the instrument upon which the plaintiff declares is not a sale vesting title to the property in the possession of the adjudicatees at a judicial sale," etc.

The court on page 775 of Viguerie v. Hall, 107 La.., 31 So. 1019, 1022, held concerning the defense urged:

"As matters stand, simply on an exception of no cause of action we must assume it to be a legal act. Defendants have as yet shown equities in the premises, and there is nothing to indicate that a single right or defense which they had or have against Mrs. Viguerie could not be as effectually set up against the present plaintiff as against her. Defendants have no legal interest in inquiring into the relations between the plaintiff and his transferor, or the motives or purposes which may have influenced them in passing the act, further than in seeing that she is not legally injured thereby. The same defenses which would have been available to defendants as against a demand made by Mrs. Viguerie to annul the judicial sale appear to be open to them as against the plaintiff. They can ask no more. It is not an unusual occurrence for parties to place their property and rights in the name and under the control of others, without any consideration whatever, and without the intention of ownership being actually transferred. Such acts are permissible, and cannot be gainsaid, unless they carry injury to someone. A simulation is not necessarily a fraud. It is only so when injury to third persons is intended."

The holding in Viguerie v. Hall is cited with approval and followed in Hunter v. Chicago Lumber & Coal Co., 156 La. 19, pages 33 and 34, 100 So. 35.

Smith et al. v. Richland Compress & Warehouse Co., 153 La. 820, 96 So. 668, is another case involving the identical question before the court, except that the suit was for the recovery of damages on ac-

count of the loss of cotton (quotation from syllabus):

"One to whom legal title to cotton damaged by compress company was assigned could sue for the damages, for his own account or for that of the assignors, and it was no concern of the compress company that he had not paid the assignors.

"In action against compress company for damage to cotton, brought by one to whom legal title to the cotton had been assigned, all defenses available against the assignors were open to the defendant." Citing Rawle, to Use of Russell v. Skipwith, 19 La. 207; Moore & Browder, for Use of Alter v. Bres, 18 La. Ann. 483; Smith v. Atlas Cordage Co., 41 La. Ann. 1, 5 So. 413; Viguerie v. Hall, 107 La. 767, 31 So. 1019; Hanton et al. v. New Orleans & C. R. Light & Power Co., 124 La. 562, 50 So. 544, and other cases.

The cases Leathem & Smith Lumber Co. v. Nalty, 109 La. 325, 33 So. 354, and Ruddock Cypress Co. v. Peyret, 111 La. 1019, 36 So. 105, were also petitory actions in which like defenses were urged in the answers of the defendants, considered on the merits, and the court considered that the matters urged were personal matters of no concern to the defendants.

The escrow agreement will not prevent defendant from urging against plaintiffs any defense available against Montet. The plaintiffs hold under the agreement and title all the rights of Montet in the land and in the suit for the recovery of the same. The plaintiffs are before the court the same as if Montet himself was the plaintiff. See West v. Negrotto, 52 La. Ann. 381, 27 So. 75; Adolph v. Richardson, 52 La. Ann. 1156, 27 So. 665.

The first opinion and decree of this court herein is in my opinion correct; I think it should be reinstated and made final.

I respectfully dissent.